# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

|  |  |
|---|---|
| MELANIE WOHL and ELENO CASTELLANOS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>INSURGENT BRANDS LLC D/B/A RXBAR and KELLANOVA,<br><br>     Defendants. | Case No.: 1:25-cv-01275<br><br>**FIRST AMENDED COMPLAINT**<br><br>JURY TRIAL DEMAND |

Plaintiffs Melanie Wohl and Eleno Castellanos (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, as more fully described below (the "Class"), bring this first amended class action complaint against Insurgent Brands LLC d/b/a RXBAR and Kellanova (collectively, "Defendants" or "RXBAR"). Plaintiffs' allegations are based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters.

## INTRODUCTION

1.      In the age of ultra-processed foods, most snack foods are anything but simple. Food manufacturers employ teams of chemists, microbiologists, and engineers to formulate a snack with the optimal texture, flavor, color, and shelf-stability. These scientists use flavor enhancers, dyes, preservatives, texturizing agents, emulsifiers, thickeners, sweeteners, conditioners, and various other industrial chemicals to achieve a result that bears little resemblance to natural, whole food.

2.      Many of these food additives have been proven to cause serious health problems and chronic diseases, including diabetes, vascular disease, heart disease, obesity, hypertension, inflammation, stroke, joint problems, and cancer. Faced with this evidence, health-conscious consumers increasingly seek minimally processed snacks with more wholesome ingredients.

3.      **The Challenged Representations.** To distinguish itself from the rest of the processed snack market, RXBAR purports to sell "clean" protein bars with "simple," "minimally processed" ingredients. RXBAR protein bars can be identified by their distinctive packaging and front labels, which boast a strikingly short list of ingredients followed by the statement "No B.S." (the "Challenged Representations"). See the following (the "Examples"):

1









3

4.     RXBAR's packaging and labels create the impression that their protein bars contain only whole ingredients – namely, the base ingredients listed on the front label in recipe-like form and the flavor ingredients listed at the bottom – and "No B.S."

5.     Consumers understand "No B.S." to mean "No Bullshit," i.e., no nonsense, no lies. It is RXBAR's way of saying, "what you see is what you get." Consumers expect RXBARs to include only a few wholesome ingredients and nothing hidden.

6.     RXBAR reinforces these perceptions with additional advertising claims on its website, rxbar.com, including:

    a.    "No B.S. stands for no bad stuff, meaning all of our ingredients are there for a reason. We don't use fillers, we don't cut corners, and that's why it is on our packaging."

    b.    "Stock up on clean snacks like our date and egg white protein bars and you'll never be without protein snacks that taste great and have ingredients that you can actually pronounce."

    c.    "We tell you what's on the inside on the outside."

    d.    "Simple ingredients."

    e.    "To us at RXBAR, simple means that our products are made with as few ingredients as possible. These ingredients are derived from real foods. We strive for minimally processed ingredients and we don't add anything artificial. Our protein bars and nut butters are made from ingredients you might find in your kitchen or pantry."

7.     Contrary to these representations, RXBAR's protein bars contain "natural flavors"—a notoriously "bad" and markedly un-transparent ingredient. "Natural flavors" is an

4

unspecified ingredient which contains a proprietary mixture of flavoring agents derived through a process involving chemical solvents, carriers, emulsifiers and other additives. "Natural flavors" is not listed on the front label of the Products nor does RXBAR disclose to the public what hidden sub-ingredients its "natural flavors" is comprised of.

8.      The inclusion of "natural flavors" contradicts the Product's front label representations as well as RXBAR's entire brand and overall marketing, which touts transparency and simple ingredients. Consumers do not expect a product which promises "No B.S." and "we tell you what's on the inside on the outside" would contain the unspecified and highly processed black box ingredient, "natural flavors."

9.      **The Products**. The products at issue are all flavors, sizes, and varieties of RXBAR protein bars, including, but not necessarily limited to:

   a.      RXBAR Protein Bars in Chocolate Chip, Coconut Chocolate, Vanilla Almond, Strawberry, Chocolate Sea Salt, Peanut Butter, Peanut Butter Chocolate, Blueberry, Mixed Berry, Mint Chocolate, and all seasonal flavors.

   b.      RXBAR A.M. Protein Bars in Peanut Butter Dark Chocolate, Blueberry, and Honey Cinnamon Peanut Butter.

   c.      RXBAR Nut Butter & Oat Protein Bars in Honey Cinnamon Peanut Butter and Dark Chocolate Peanut Butter

   d.      RXBAR Minis Protein Bars in Chocolate Sea Salt, Peanut Butter Chocolate, Strawberry, and Blueberry.

   e.      All RXBAR Protein Bar Variety Packs.

These products are collectively referred to in this Complaint as the "**Products.**"

10.     Each of the Products contains the Challenged Representations.

11.     The Challenged Representations lead reasonable consumers, including Plaintiffs, to incorrectly believe the Products are free from hidden, highly processed ingredients. In reality, the Products contain the unspecified and highly processed ingredient—natural flavors. RXBAR uses the Challenged Representations to deceive consumers into paying a price premium for protein bars they believe are free from hidden, highly processed ingredients.

12.     Through falsely, misleadingly, and deceptively labeling, advertising and marketing the Products, RXBAR has sought to take advantage of unwitting consumers, as well as RXBAR's lawfully acting competitors, over whom RXBAR maintains an unfair competitive advantage.

13.     **Primary Dual Objectives.** Plaintiffs bring this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*), for dual primary objectives. *One*, Plaintiffs seek, on Plaintiffs' individual behalf and on behalf of the Class, a monetary recovery of the price premium Plaintiffs and consumers have overpaid for Products that should, but fail to, comport with the Challenged Representations, as consistent with permissible law (including, for example, damages, statutory damages, nominal damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those claims for relief so permitted). *Two*, Plaintiffs seek, on Plaintiffs' individual behalf and on behalf of the Class, injunctive relief to stop RXBAR's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products are free from hidden, highly processed ingredients by requiring RXBAR to change its business practices, which may include one or more of the following: removal or

6

modification of the Challenged Representations from the Products' labels; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## JURISDICTION

14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Facts supporting the alleged aggregate amount in controversy are as follows: Defendants sold "105 million bars" in 2017 with net revenue of $130 million.[1] By 2018, sales of RXBAR "hit $213 million."[2] The Products are available in "more than 125,000 locations across the United States,"[3] including at major retailers such as Amazon, Whole Foods, Walmart, Costco, and Target across the nation, including in California and New York. For example, when the RXBAR A.M. Protein Bars were released in 2022, they were available at "Whole Foods Markets and Target stores nationwide."[4] The Products continue to be prominently

---

[1]     Peter Henderson, *Starting rocket ships to growth*, FOOD IN CANADA (Feb. 26, 2018), https://www.foodincanada.com/features/starting-rocket-ships-growth/; *see also* Stephen J. Bronner, *The Founders of RXBar, Acquired by Kellogg for $600 Million, Built the Company by 'Having a Bias Toward Action'*, ENTREPRENEUR (Jan. 29, 2018), https://www.entrepreneur.com/growing-a-business/the-founders-of-rxbar-acquired-by-kellogg-for-600/308136.

[2]     Barbara Booth, *RXBar driving millions for Kellogg as its cereal business falls out of vogue*, CNBC (Sept. 24, 2019), https://www.cnbc.com/2019/09/24/rxbar-drives-millions-for-kellogg-as-cereal-biz-falls-out-of-vogue.html.

[3]     Henderson*, supra* n.1; RXBAR, *RXBAR Expands Into the $1.3 Billion Hot Cereal Category with the Launch of New RX A.M. Oats* (Aug. 12, 2019), https://shop.rxbar.com/media-center/press-releases/rx-am-oats-launch.

[4]     Gloria Cowdin, *New breakfast bar line debuts at RXBAR*, FOOD BUSINESS NEWS (June 7, 2022), https://www.foodbusinessnews.net/articles/21514-new-breakfast-bar-line-debuts-at-rxbar.

featured on Amazon's list of "Best Sellers in High Protein Bars,"[5] including: RXBAR Protein Bars in Chocolate Sea Salt (#6); RXBAR Nut Butter & Oat Protein Bars in Honey Cinnamon Peanut Butter (#12); RXBAR Minis Protein Bars Variety Packs (#14); RXBAR Protein Bars in Peanut Butter Chocolate (#16); RXBAR Protein Bars in Vanilla Almond (#20); RXBAR Protein Bars in Coconut Chocolate (#24); and RXBAR Nut Butter & Oat Protein Bars in Dark Chocolate Peanut Butter (#35). Plaintiffs allege that they and Class members paid an unwarranted premium attributable to the Challenged Representations for each purchase of the Products.[6] Plaintiffs and Class members also seek available statutory damages associated with the purchase of the Products, including those arising for violations of Cal. Civ. Code § 1750, N.Y. G.B.L. § 349 (empowering the Court to award following trial "actual damages or fifty dollars, whichever is greater," for each violation, and allowing the Court, "in its discretion, [to] increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section."),[7] and N.Y. G.B.L. § 350 (empowering the Court to award following trial "actual damages or five hundred dollars, whichever is greater," for each violation, and allowing the Court, "in its discretion, [to] increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court

---

[5]      Amazon, *Amazon Best Sellers: Best High Protein Bars*, https://www.amazon.com/gp/bestsellers/grocery/11437477011 (last accessed Feb. 26, 2025) [https://web.archive.org/web/20250227023208/https://www.amazon.com/gp/bestsellers/grocery/ 11437477011].

[6]      Bronner, *supra* n.1 ("[P]eople like RXBar because it's minimal ingredient. [sic] People don't buy it because of the brand name . . . . '[N]o B.S.' became a kind of a quirky master claim essentially.").

[7]      N.Y. G.B.L. § 349(h).

finds that the defendant willfully or knowingly violated this section.").[8] This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

## VENUE

15.     This District has personal jurisdiction over Defendants because Defendants conduct substantial business in this District and maintains its principal places of business in this District.

16.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391, because Defendants reside in this District, regularly transact business in this District, and a substantial part of the events giving rise to this action arose in this District.

## PARTIES

**A.      Plaintiff Melanie Wohl**

17.     The following is alleged based upon Plaintiff Melanie Wohl's personal knowledge:

a.      **Residence.** Plaintiff Wohl is a citizen of New York and is domiciled in Suffolk County in the State of New York.

b.      **Purchase Details.** Plaintiff Wohl purchased various RXBAR products several times over the last three years. Such purchases include:

i.      RXBAR Variety Pack from a Costco store in Suffolk County in or around November 2022 for approximately $17.00.

ii.     RXBAR Variety Pack from a Costco store in Suffolk County in or around April 2023 for approximately $14.00.

iii.    RXBAR Variety Pack from a Costco store in Suffolk County in or around late July 2024 for approximately $13.00.

c.      **Reliance on Challenged Representations**. In making her purchases, Plaintiff Wohl read the Challenged Representations on the Products'

---

[8]      N.Y. G.B.L. § 350-e(3).

labeling, leading Plaintiff Wohl to believe that the Products were free from unidentified, highly processed ingredients.

d.      **No Actual Knowledge of Falsity.** At the time of her purchase, Plaintiff Wohl did not know that the Challenged Representations were false in that Plaintiff Wohl did not know that the Products contain hidden, highly processed ingredients in the form of natural flavors.

e.      **No Notice of Contradictions.** Plaintiff Wohl did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labels that contradicted the prominent Challenged Representations or otherwise suggested that the Products in fact contain natural flavors.

f.      **Causation/Damages.** Plaintiff Wohl would not have purchased the Products, or would not have paid as much for the Products, but for the Challenged Representations—i.e., that the Products are free from hidden, highly processed ingredients.

g.      **Desire to Repurchase.** Plaintiff Wohl continues to see the Products available for purchase and would consider purchasing the Products again in the future if she could be sure the Products delivered the advertised benefits.

h.      **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Wohl is not personally familiar with the formulation of the Products as she does not possess any specialized knowledge, skill, experience, or education in the use of additives in foods or the manufacturing of protein bars. Thus, Plaintiff Wohl is unable to determine whether the Products' Challenged

Representations are true—i.e., whether the Products are free from hidden, highly processed ingredients as advertised.

**B.** **Plaintiff Eleno Castellanos**

18. The following is alleged based upon Plaintiff Eleno Castellanos' personal knowledge:

    a. **Residence.** Plaintiff Castellanos is a citizen of California and is domiciled in Santa Clara County in the State of California.

    b. **Purchase Details.** Plaintiff Castellanos purchased various RXBAR Protein Bars several times over the last four years, including the RX BAR Protein Bar: Vanilla Almond, Coconut Chocolate, Strawberry; RXBAR A.M. Protein Bar: Honey Cinnamon Peanut Butter; RXBAR Nut Butter & Oat Protein Bar: Honey Cinnamon Peanut Butter; RXBAR Minis Protein Bar: Strawberry; and RXBAR Protein Bar: Variety Pack. Plaintiff Castellanos made these purchases from a Target store, a Safeway store, and a Walmart store located in the Santa Clara area in the last four years, including in or around the end of 2024. Plaintiff Castellanos paid approximately $2.69 per bar for his purchases.

    c. **Reliance on Challenged Representations**. In making his purchases, Plaintiff Castellanos read the Challenged Representations on the Products' labeling, leading Plaintiff Castellanos to believe that the Products were free from unidentified, highly processed ingredients.

    d. **No Actual Knowledge of Falsity.** At the time of his purchase, Plaintiff Castellanos did not know that the Challenged Representations were false in

that Plaintiff Castellanos did not know that the Products contain hidden, highly processed ingredients in the form of natural flavors.

e.  **No Notice of Contradictions.** Plaintiff Castellanos did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labels that contradicted the prominent Challenged Representations or otherwise suggested that the Products in fact contain natural flavors.

f.  **Causation/Damages.** Plaintiff Castellanos would not have purchased the Products, or would not have paid as much for the Products, but for the Challenged Representations—i.e., that the Products are free from hidden, highly processed ingredients.

g.  **Desire to Repurchase.** Plaintiff Castellanos continues to see the Products available for purchase and would consider purchasing the Products again in the future if he could be sure the Products delivered the advertised benefits.

h.  **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Castellanos is not personally familiar with the formulation of the Products as he does not possess any specialized knowledge, skill, experience, or education in the use of additives in foods or the manufacturing of protein bars. Thus, Plaintiff Castellanos is unable to determine whether the Products' Challenged Representations are true—i.e., whether the Products are free from hidden, highly processed ingredients as advertised.

19.  **Plaintiffs' Future Harm.** RXBAR continues to label and sell the Products with the Challenged Representations. However, Plaintiffs are average consumers who are not

sophisticated in the use of highly processed additives such as natural flavors in food manufacturing. Since Plaintiffs would like to purchase the Products again—despite the fact that the Products were once marred by false advertising or warranties—Plaintiffs would likely and reasonably, but incorrectly, assume the Products are free from hidden, highly processed ingredients as advertised. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming RXBAR has fixed the Products such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiffs are currently and, in the future, deprived of the ability to purchase the Products.

### C.    Defendants

20.     Upon information and belief, Insurgent Brands LLC d/b/a RXBAR is a citizen of Illinois because at least one of its members is a citizen of Illinois. In a separate lawsuit, Insurgent Brands LLC filed in federal court a Notice of Removal dated September 16, 2019, and averred in relevant part:

> RXBAR (Insurgent Brands LLC) is a limited liability company organized under the laws of the State of Illinois. RXBAR is indirectly wholly owned by Kellogg through Kellogg USA LLC, a limited liability company organized under the laws of the State of Michigan. Kellogg Company is the sole owner and member of Kellogg USA LLC, which in turn is the sole owner and member of RXBAR . . . . Accordingly, for diversity purposes RXBAR's citizenship is determined by Kellogg . . . .[9]

In 2023, the Kellogg Company became known as Kellanova and designated its principal place of business in Cook County, Illinois.[10]

---

[9]     Notice of Removal ¶ 6, ECF No. 1, *Noour, Inc. v. Insurgent Brands LLC*, No. 1:19-cv-06174 (N.D. Ill. Sept. 16, 2019).

[10]     Kellanova, Current Report (Form 8-K) (Oct. 2, 2023).

21.     Kellanova (formerly known as the Kellogg Company), is a Delaware Corporation, with its principal place of business in Cook County, Illinois. Kellanova purchased RXBAR in 2017.

## FACTUAL ALLEGATIONS

A.     **RXBAR Markets and Labels "No B.S." Protein Bars Made of "Real Ingredients"**

22.     Defendants market RXBAR as a wholesome, transparent, "No B.S." brand, that began in the owners' kitchen using simple ingredients.

23.     RXBAR claims: "We make protein bars with no B.S. and we are real upfront about it."

24.     RXBAR explains "No B.S." means "no bad stuff—of course" and which consumers understand to mean "No Bullshit."

25.     In preaching their "No B.S" ethos to consumers, Defendants make the following additional marketing claims on their official website at rxbars.com:

    a.     "No B.S. stands for no bad stuff, meaning all of our ingredients are there for a reason. We don't use fillers, we don't cut corners, and that's why it is on our packaging."

    b.     "Stock up on clean snacks like our date and egg white protein bars and you'll never be without protein snacks that taste great and have ingredients that you can actually pronounce."

    c.     "We tell you what's on the inside on the outside."

    d.     "Simple ingredients."

    e.     "To us at RXBAR, simple means that our products are made with as few ingredients as possible. These ingredients are derived from real foods. We

strive for minimally processed ingredients and we don't add anything artificial. Our protein bars and nut butters are made from ingredients you might find in your kitchen or pantry."

26.     Consistent with their branding campaign, RXBAR packages and labels the Products with "No B.S." and a short list of ingredients on the front label.

27.     As shown in the Examples, the front label displays a short recipe-like format of the base ingredients (e.g., 3 egg whites, 6 almonds, 4 cashews, 2 dates), capped off with the statement "No B.S" at the bottom. The flavor ingredients are listed underneath (e.g., chocolate, sea salt). RXBAR states on its website that its front label is meant to convey to consumers: "What's inside. What isn't. We think it's everything you need to know."

28.     Based on the unique, eye-catching marketing and labeling of the RXBAR Products, consumers are led to believe the Products contain only whole ingredients – namely those appearing on the front label – to the exclusion of any hidden or highly processed ingredients, such as natural flavoring or other additives.

29.     RXBAR Products labels changed in 2015 to the recognizable simple-ingredient list and "No B.S." claim on the front label.

 

30.     One of the founders of RXBAR, Peter Rahal, initiated the redesign by instructing the company's label designers that "people like RXBAR because it's minimal ingredient. [sic] People don't buy it because of the brand name."[11] He further stated that "[b]efore the redesign, we did the trade show circuits and no one gave us any love."[12] The redesign moved the Products'

---

[11]     Bronner, supra n.1.

[12]     *Id.*

"short ingredient list to the front of the packaging in a large font—followed by the last ingredient, "no B.S."[13]

31.     The redesign increased RXBAR's revenues from $2 million to $160 million in just three years.[14] Within two years of the redesign, Kellogg's purchased the RXBAR brand in 2017 for $600 million.[15]

**B.      The RXBAR Products Contain A Hidden Ingredient: "Natural Flavors."**

32.     Natural flavors are chemical compounds designed to enhance flavor sensations in foods and beverages. Each "natural flavor" has its own particular chemical structure.

33.     Natural flavors are defined by the FDA, as follows:

> The term natural flavor or natural flavoring means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.[16]

34.     The FDA's definition delineates the types of source material which are permitted in the make-up of any "natural flavor." Yet natural flavors are not limited to FDA-compliant source

---

[13]     Simon Melvin, *This Protein Bar Cofounder Sold His Company for $600 Million. Now He Wants Another Bite of the Market*, Forbes (Dec. 6, 2024, 6:00 AM), https://www.forbes.com/sites/simonemelvin/2024/12/06/peter-rahal-david-protein-bar-interview-rxbar-600-million/.

[14]     *Id.*; Nicole Oronzio, *RXBAR's Marketing Maneuver*, Braithwaite, https://gobraithwaite.com/thinking/rxbars-marketing-maneuver/ (last visited Feb. 19, 2025).

[15]     *Kellogg adds RXBAR, fastest growing U.S. nutrition bar brand, to wholesome snacks portfolio*, PR NEWSWIRE (Oct. 6, 2017), https://www.prnewswire.com/news-releases/kellogg-adds-rxbar-fastest-growing-us-nutrition-bar-brand-to-wholesome-snacks-portfolio-300532438.html.

[16]     21 C.F.R. § 101.22(a)(3).

material. After a source material is extracted, it then undergoes significant processing with various chemical components to achieve the desired smell and taste for a food or drink. Both the extraction and functionality of natural flavors require the use of various chemical solvents, carriers, emulsifiers, and other additives to facilitate production, storage, and flavor consistency. These chemicals persist as incidental additives in the primary flavor compound that is added to any food or beverage, including the Products.[17]

35. Natural flavors can be synthetically and artificially derived from anything that isn't petroleum or a petroleum byproduct. Common ingredients that can be listed on an ingredient list as "natural flavors" include monosodium glutamate (MSG—a suspected endocrine disruptor and confirmed excitotoxin), processed free glutamic acid, hydrolyzed protein product (HPP), hydrolyzed vegetable protein (HVP), propylene glycol, L-Cysteine (an amino acid extracted from human hair or duck feathers), castoreum (a flavoring agent that comes from the anal glands of beavers), carrageenan (a suspected carcinogen), GMO-derived ingredients, and other synthetic and artificial chemicals.

36. The one thing that all natural flavors have in common is that they are highly processed food additives.

37. Because natural flavors contain a variety of hidden, unspecified source material, sub-ingredients and chemical components, its presence on an ingredient list is a black box for consumers who desire ingredient transparency and minimally processed foods.

---

[17] David Andrews, *Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors*, Environmental Working Group, https://www.ewg.org/foodscores/content/natural-vs-artificial-flavors/ (last visited Feb. 5, 2025).

38.     The Products are comprised of whole (un-processed) ingredients, most of which are listed on the front labels, with the exception of "natural flavors"[18] which is not listed on the Products' front labels and which RXBAR disclaims by virtue of the "No B.S." statement. See the following table of ingredients:

| Product | Front Label Ingredients | Actual Ingredients |
|---|---|---|
| Protein Bar (Chocolate Chip) | 3 egg whites, 6 almonds, 4 cashews, 2 dates, chocolate | Dates, egg whites, almonds, cashews, chocolate, natural flavors, sea salt |
| Protein Bar (Coconut Chocolate) | 3 egg whites, 6 almonds, 4 cashes, 2 dates, coconut, chocolate | Dates, egg whites, almonds, cashews, chocolate, coconut, natural flavors, sea salt |
| Protein Bar (Vanilla Almond) | 3 egg whites, 7 almonds, 4 cashews, 2 dates, vanilla | Dates, egg whites, almonds, cashews, vanilla bean, sea salt, natural flavors |
| Protein Bar (Strawberry) | 3 egg whites, 6 almonds, 4 cashews, 2 dates, strawberry | Dates, egg whites, almonds, cashews, strawberries, natural flavors |
| Protein Bar (Chocolate Sea Salt) | 3 egg whites, 6 almonds, 5 cashews, 2 dates, chocolate, sea salt | Dates, egg whites, cashews, almonds, chocolate, cocoa, natural flavors, sea salt |
| Protein Bar (Peanut Butter) | 3 egg whites, 14 peanuts, 2 dates, peanut butter | Dates, peanuts, egg whites, natural flavors, sea salt |
| Protein Bar (Peanut Butter Chocolate) | 3 egg whites, 14 peanuts, 2 dates, peanut butter, chocolate | Dates, peanuts, egg whites, chocolate, peanut flour (peanuts), natural flavors, cocoa, sea salt |
| Protein Bar (Blueberry) | 3 egg whites, 6 almonds, 4 cashews, 2 dates, blueberry | Dates, egg whites, almonds, cashews, blueberries, natural flavors |

---

[18]     The A.M. Protein Bars and the Nut Butter and Oat Protein Bars also contain high oleic sunflower oil, which is highly processed. Amazon, https://www.amazon.com/RXBAR-Protein-Variety-Gluten-Breakfast/dp/B09WXF5PJQ (last visited Feb. 5, 2025) (depicting A.M. Protein Bars ingredients); RXBAR, https://shop.rxbar.com/shop/nut-butter-oat-protein-bar-peanut-butter-dark-chocolate.html (last visited Feb. 5, 2025) (depicting Nut Butter and Oat Protein Bars ingredients).

| | | |
|---|---|---|
| Protein Bar (Mixed Berry) | 3 egg whites, 6 almonds, 4 cashews, 2 dates, mixed berries | Dates, egg whites, almonds, cashews, cranberries, strawberries, raspberries, natural flavors |
| Protein Bar (Mint Chocolate) | 3 egg whites, 4 almonds, 6 cashews, 2 dates, mint, chocolate | Dates, egg whites, cashews, almonds, chocolate, cocoa, mint, natural flavors, sea salt |
| Protein Bar (Pumpkin Spice) [Seasonal] | 3 egg whites, 6 almonds, 5 cashews, 2 dates, pumpkin spice | Dates, egg whites, cashews, almonds, cinnamon, natural flavors, pumpkin, cloves |
| Protein Bar (Gingerbread) [Seasonal] | 3 egg whites, 6 almonds, 5 cashews, 2 dates, gingerbread | Dates, egg whites, cashews, almonds, allspice, ginger, sea salt, natural flavors |
| A.M. Protein Bar (Peanut Butter Dark Chocolate) | 3 tbsp oats, 14 peanuts, 2 egg whites, 2 tsp honey, peanut butter, dark chocolate | Oats, honey, peanut butter (peanuts), egg whites, peanuts, pumpkin seeds, brown rice, chocolate, avocado and/or high oleic sunflower oil, coconut sugar, oat fiber, cocoa, sea salt, natural flavors |
| A.M. Protein Bar (Blueberry) | 3 tbsp oats, 5 cashews, 2 egg whites, 2 tsp honey, blueberry | Oats, honey, egg whites, cashew butter (cashews), almonds, blueberries, pumpkin seeds, brown rice, high oleic sunflower oil, coconut sugar, oat fiber, sea salt, natural flavors, lemon |
| A.M. Protein Bar (Honey Cinnamon Peanut Butter) | 3 tbsp oats, 14 peanuts, 2 egg whites, 2 tsp honey, cinnamon, peanut butter | Oats, honey, peanut butter (peanuts), egg whites, peanuts, pumpkin seeds, brown rice, high oleic sunflower oil, coconut sugar, oat fiber, natural flavors, sea salt, cinnamon |
| Nut Butter & Oat Protein Bar (Honey Cinnamon Peanut Butter) | 3 tbsp oats, 14 peanuts, 2 egg whites, 2 tsp honey, cinnamon, peanut butter | Oats, honey, peanut butter (peanuts), egg whites, peanuts, pumpkin seeds, brown rice, avocado and/or high oleic sunflower oil, coconut sugar, oat fiber, |

| | | sea salt, cinnamon, natural flavors |
|---|---|---|
| Nut Butter & Oat Protein Bar (Dark Chocolate Peanut Butter) | 3 tbsp oats, 14 peanuts, 2 egg whites, 2 tsp honey, dark chocolate, peanut butter | Oats, honey, peanut butter (peanuts), egg whites, peanuts, pumpkin seeds, brown rice, chocolate, avocado and/or high oleic sunflower oil, coconut sugar, oat fiber, cocoa, sea salt, natural flavors |
| Minis Protein Bar (Chocolate Sea Salt) | 1½ egg whites, 3 almonds, 3 cashews, 1 date, chocolate, sea salt | Dates, egg whites, cashews, almonds, chocolate, cocoa, natural flavors, sea salt |
| Minis Protein Bar (Peanut Butter Chocolate) | 1½ egg whites, 7 peanuts, 1 date, peanut butter, chocolate | Dates, peanuts, egg whites, chocolate, peanut flour (peanuts), natural flavors, cocoa, sea salt |
| Minis Protein Bar (Strawberry) | 1½ egg whites, 3 almonds, 2 cashews, 1 date, strawberry | Dates, egg whites, almonds, cashews, strawberries, natural flavors |
| Minis Protein Bar (Blueberry) | 1½ egg whites, 3 almonds, 2 cashews, 1 date, blueberry | Dates, egg whites, almonds, cashews, blueberries, natural flavors |

**C.** **The Reasonable Consumer Was Misled by the Challenged Representations to Their Detriment**

39. **Reasonable Consumer's Perception.** The Challenged Representations lead reasonable consumers, including Plaintiffs, to believe the Products are free from hidden, highly processed ingredients. Front-label representations, such as the Challenged Representations, are highly material to their purchasing decisions. However, the Products contain the unspecified and highly processed ingredient, natural flavors.

40. Consumers are deceived by the Challenged Representations when they learn that the Products contain natural flavors. See the following examples of consumer reviews posted on RXBAR's official website and RXBAR product pages on Amazon.com:

**Michal L.**

US

★☆☆☆☆

**Hidden Ingredients... the front label is a lie!**

3 years ago

Natural Flavors are BS

Helpful?　　(0)　　(0)　　Report

---

**Bob R.**

US

★☆☆☆☆

**Bad product**

2 years ago

You say no BS. Why do you add natural flavor? So bad!

Helpful?　　(0)　　(0)　　Report

---

★★★☆☆
**Love the bars …hate they have natural flavors!**

**Jamie J.**

2 years ago

I purchased these bars thinking they were "clean" since your dating in the bars have no BS. Week that's BS because they have natural flavors and the nuts and dates used aren't organic. Unfortunately, I will not be repurchasing until you actually made these bars clean.

Helpful?　　(0)　　(0)　　Report

---

 Nor

★☆☆☆☆　**"Natural Flavors" is an appetite stimulant, and there is nothing natural about it even if derived from whole foods.**

Reviewed in the United States on January 1, 2018

Flavor Name: Chocolate Sea Salt　|　Size: 1.83 Ounce (Pack of 12)　|　**Verified Purchase**

I probably wouldn't pick on this product if it didn't boast "No B.S." on the package. However, "natural flavors" are the exact same thing chemically as "artificial flavors", they are just produced by different methods, and they have the effect of overriding our natural appetite controls, and disinhibiting appetite. We experience this as "damn this is great!", which is a different experience than you would have of the food without the "natural" flavors in it. There's nothing natural about adding intensely concentrated, isolated chemicals from food. "Natural flavors" are an appetite stimulant and that, to me, is B.S., same as how MSG in Doritos is there to override the natural breaks on our appetite to help us stop eating when we are full.

10 people found this helpful

Helpful　|　Report　|　Permalink



41. **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiffs, in deciding to buy the Products—meaning that it is important to consumers that the Products are free from hidden, highly processed ingredients, thereby motivating them to buy the Products.

42. **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representations in deciding to purchase the Products, as Plaintiffs, as well as the Class, made their purchase decisions at least in part based on their reasonable belief that they would receive protein bars without hidden, highly processed ingredients.

43. **Falsity.** The Challenged Representations are false, misleading, and deceptive because, contrary to their promise that the Products are free from hidden, highly processed ingredients, the Products contain the hidden, highly processed ingredient natural flavors.

44. **Consumers Lack Knowledge of Falsity.** The Class members who purchased the Products, including Plaintiffs, did not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. Further, the Products' actual formulation is insufficient notice to consumers, who rely on the Challenged Representations to mean the Products are free from hidden, highly processed ingredients, and who, unlike RXBAR, do not possess the specialized knowledge required to

conclude that a protein bars product advertised as free from hidden, highly processed ingredients nevertheless contains the hidden, highly processed ingredient natural flavors.

45.     **RXBAR's Knowledge.** RXBAR knew, or should have known, that the Challenged Representations are misleading, deceptive, and unlawful, at the time that RXBAR manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiffs and the Class.

> a.     **Knowledge of Reasonable Consumers' Perception.** RXBAR knew or should have known that the Challenged Representations would lead reasonable consumers to believe that Products labeled with an incomplete ingredient list and the statement "No B.S." do not contain hidden, highly processed ingredients. Not only has RXBAR utilized a long-standing brand strategy to identify the Products as free from hidden, highly processed ingredients, but RXBAR also has an obligation under Section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. 45 *et seq*., to evaluate its marketing claims from the perspective of the reasonable consumer. That means RXBAR was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products are free from hidden, highly processed ingredients. Thus, RXBAR either knew that the Challenged Representations were misleading before it marketed the Products to the Class, including Plaintiffs, or RXBAR would have known that that it was deceptive had it complied with its statutory obligations.

b. **Knowledge of Falsity.** RXBAR manufactured and marketed the Products with the Challenged Representations, but RXBAR opted to make Products that do not conform with the representations. Specifically, RXBAR advertised and labeled the Products with the Challenged Representations but chose to manufacture the Products with the hidden, highly processed ingredient natural flavors.

c. **Knowledge of Materiality.** RXBAR knew or should have known of the Challenged Representations' materiality to consumers. ***First***, manufacturers and marketers, like RXBAR, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels and packaging demonstrates RXBAR's awareness of its importance to consumers and RXBAR's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the constant, unwavering use of the Challenged Representations on countless Products, advertisements, and throughout RXBAR's marketing campaign, evidence RXBAR's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences RXBAR's

intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales. ***Third***, the Products' primary, if not only, purpose was to provide minimally processed protein bar alternative to traditional protein bars. Thus, RXBAR knew, in designing the Products, that the Challenged Representations were material to consumers.

d.    **RXBAR's Continued Deception, Despite Its Knowledge.** RXBAR, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, packaging, and advertisements—i.e., RXBAR readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite RXBAR's knowledge of the Challenged Representations' falsity, and RXBAR's knowledge that consumers reasonably rely on the Challenged Representations in deciding to buy the Products, RXBAR deliberately chose to market the Products with the Challenged Representations, thereby misleading consumers into buying or overpaying for the Products. Thus, RXBAR knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiffs, into buying the Products to attain the Product-attributes that RXBAR falsely advertised and warranted.

46.    **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the Products or would not have paid a price premium for them, if they had known that the Challenged Representations were false and misleading or that the Products contained hidden,

highly processed ingredients. Accordingly, based on RXBAR's Challenged Representations, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

### D.    Other Similarly Marketed Products Do Not Contain Natural Flavors

47.    Natural flavors are not necessary nor expected in the Products.

48.    Competitor products which are similarly marketed to indicate transparency and minimal processing of their snack bars and that contain similar front-label claims (i.e., a front-label ingredient list and a decisive statement similar to "No B.S.," like "That's it" or "Just 3 Real Ingredients") do not contain natural flavors nor any other hidden or unspecified processed ingredients. See the following examples:



INGREDIENTS: APPLES, STRAWBERRIES.



**E.** **The Products are Substantially Similar**

49. All of the RXBAR Products are substantially similar to one another, as follows:

a. **RXBAR.** All Products are manufactured, sold, marketed, advertised, and labeled by RXBAR.

b. **Brand.** All Products are sold under the same brand name: RXBAR.

c. **Marketing Demographics.** All Products are marketed directly to consumers for personal consumption.

d. **Purpose.** All Products are intended to be minimally processed protein bars marketed under a purportedly transparent brand.

e. **Use.** All Products are used in the same manner—consumed as food.

f. **Challenged Representations.** All Products contain the Challenged Representations on their labeling—namely, they contain an incomplete ingredient list and the statement "No B.S."

g. **Packaging.** All Products are similarly packaged.

h. **Key Attributes.** All Products contain the ingredient, natural flavors.

i. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products—consumers overpay for protein bars they believe to be free from hidden, highly processed ingredients, when in reality, the Products contain the hidden, highly processed ingredient, natural flavors.

## THERE IS NO ADEQUATE REMEDY AT LAW

50. **No Adequate Remedy at Law.** Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other

causes of action asserted herein. It includes, for example, RXBAR's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations across a multitude of media platforms, including the Products' labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a claim for relief for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of products at issue). Thus, Plaintiff Castellanos and members of the California Subclass may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or

did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because RXBAR continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent RXBAR from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted from years of RXBAR's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labeling concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by RXBAR's future harm because discovery and Plaintiffs' investigations have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has

not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products sales, and quantities of past/future Products sales.

d. **Public Injunction**. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California v. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff Castellanos and members of the California Subclass against RXBAR, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and

availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## **CLASS ALLEGATIONS**

51.     **Class Definitions.** Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of the Class defined as follows:

a.      All residents of the United States who, within the applicable statute of limitations periods, purchased the Products containing the Challenged Representations on the Products' labels and/or packaging for purposes other than resale ("**Nationwide Class**");

b.      All residents of California who, within the applicable statute of limitations periods, purchased the Products containing the Challenged Representations on the Products' labels and/or packaging for purposes other than resale ("**California Subclass**"); and

c.      All residents of New York who, within the applicable statute of limitations periods, purchased the Products containing the Challenged Representations on the Products' labels and/or packaging for purposes other than resale ("**New York Subclass**").

The Nationwide Class, California Subclass, and New York Subclass are collectively referred to as the "**Class.**"

52. **Class Definition Exclusions.** Excluded from the Class are: (i) RXBAR, its assigns, successors, and legal representatives; (ii) any entities in which RXBAR has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

53. **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by RXBAR, or otherwise.

54. **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States; the California Subclass consists of thousands of purchasers (if not more) dispersed throughout the State of California; and the New York Subclass consists of thousands of purchasers (if not more) dispersed throughout the State of New York. Accordingly, it would be impracticable to join all members of the Class before the Court.

55. **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

        a.     Whether RXBAR engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products;

b.     Whether RXBAR's conduct of advertising and selling the Products as free from hidden, highly processed ingredients despite the inclusion of the hidden, highly processed ingredient natural flavors constitutes an unfair method of competition, or unfair or deceptive act or practice;

c.     Whether RXBAR used deceptive representations in connection with the sale of the Products that is likely to deceive reasonable consumers;

d.     Whether RXBAR represented that the Products have characteristics or quantities that they do not have;

e.     Whether RXBAR advertised the Products with intent not to sell them as advertised;

f.     Whether RXBAR's labeling and advertising of the Products are misleading;

g.     Whether RXBAR knew or by the exercise of reasonable care should have known its labeling and advertising was and is misleading;

h.     Whether RXBAR's conduct is an unfair business practice;

i.     Whether RXBAR's conduct is a fraudulent business practice;

j.     Whether RXBAR's conduct is an unlawful business practice;

k.     Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l.     How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.     Whether RXBAR's conduct constitutes breach of warranty;

n.     Whether Plaintiffs and the Class are entitled to injunctive relief; and

o.     Whether RXBAR was unjustly enriched by its unlawful conduct.

56. **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class members.

57. **Typicality.** Plaintiffs' claims are typical of the claims of the Class members they seek to represent because Plaintiffs, like the Class members, purchased RXBAR's misleading and deceptive Products. RXBAR's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of RXBAR's conduct. Plaintiffs' and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

58. **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because Plaintiffs' interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs will fairly and adequately protect Class members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

59. **Superiority and Manageability.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

   b. Absent a Class, the members of the Class will continue to suffer damage and RXBAR's unlawful conduct will continue without remedy while RXBAR profits from and enjoys its ill-gotten gains;

36

c.    Given the size of individual Class members' claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs RXBAR committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of RXBAR has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court;

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class members can seek redress for the harm caused to them by RXBAR. Further, Class members can be identified by an examination and analysis of the business records regularly maintained by RXBAR, among other records within RXBAR's possession, custody, or control, as well as through data maintained by third-party retailers who, upon information and belief, retain customer records and order histories of the Products; and

f.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

60.    **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for RXBAR.

61.     **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as RXBAR has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Breach of Warranty**

***(On Behalf of the Class)***

62.     **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

63.     **The Class.** Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class, the California Subclass, and the New York Subclass, who purchased the Products within the applicable statute of limitations.

64.     **Express Warranty.** By advertising and selling the Products at issue, RXBAR made promises and affirmations of fact on the Products' labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and RXBAR. RXBAR purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

65.     **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, RXBAR, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' labeling, and through its marketing and advertising, as described herein. This labeling and advertising,

combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and RXBAR—namely, that the Products, among other things, conform to the Challenged Representations.

66. **Breach of Warranty.** Contrary to RXBAR's warranties, the Products do not conform to the Challenged Representations and, therefore, RXBAR breached its warranties about the Products and their qualities.

67. **Causation/Remedies.** As a direct and proximate result of RXBAR's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the unwarranted premium they paid for the Products. Specifically, Plaintiffs and members of the Class paid for Products that contained no hidden, highly processed ingredients. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the unwarranted premium paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin RXBAR's misconduct to prevent ongoing and future harm that will result.

68. **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this claim for relief for breach of warranty on behalf of Plaintiffs and the Class. RXBAR's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. RXBAR's misconduct is malicious as RXBAR acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. RXBAR willfully and knowingly disregarded the rights of Plaintiffs and consumers as RXBAR was aware of the probable dangerous consequences

of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. RXBAR's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. RXBAR's misconduct is fraudulent as RXBAR, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of RXBAR.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### *(On Behalf of the Class)*

69. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

70. **The Class.** Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class, the California Subclass, and the New York Subclass, who purchased the Products within the applicable statute of limitations.

71. **Plaintiffs/Class Conferred a Benefit.** By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on RXBAR in the form of the purchase price of the Products.

72. **RXBAR's Knowledge of Conferred Benefit.** RXBAR had knowledge of such benefit and RXBAR appreciated the benefit because, were consumers not to purchase the Products, RXBAR would not generate revenue from the sales of the Products.

73. **RXBAR's Unjust Receipt Through Deception.** RXBAR's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by RXBAR's fraudulent, misleading, and deceptive labeling and advertising.

74. **Causation/Damages.** As a direct and proximate result of RXBAR's unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the unwarranted premium they paid for the Products. Specifically, Plaintiffs and members of the Class paid for Products that contained no hidden, highly processed ingredients. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the unwarranted premium paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin RXBAR's misconduct to prevent ongoing and future harm that will result.

75. **Punitive Damages**. Plaintiffs seek punitive damages pursuant to this claim for relief for unjust enrichment on behalf of Plaintiffs and the Class. RXBAR's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. RXBAR's misconduct is malicious as RXBAR acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. RXBAR willfully and knowingly disregarded the rights of Plaintiffs and consumers as RXBAR was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. RXBAR's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate

misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. RXBAR's misconduct is fraudulent as RXBAR, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of RXBAR.

### THIRD CLAIM FOR RELIEF

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(On Behalf of the California Subclass)**

76.     **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

77.     **California Subclass.** Plaintiff Castellanos brings this claim individually and on behalf of members of the California Subclass who purchased the Products within the applicable statute of limitations.

78.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

79.     **False Advertising Claims.** RXBAR, in its advertising of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations. Such claims appear on the labels and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

80. **RXBAR's Deliberately Fraudulent Marketing Scheme.** RXBAR does not have any reasonable basis for the claims about the Products made in RXBAR's advertising and on RXBAR's labeling because the Products are not free from hidden, highly processed ingredients. RXBAR knew and knows that the Products are not free from hidden, highly processed ingredients because they contain natural flavors, though RXBAR intentionally advertised and marketed the Products to deceive reasonable consumers.

81. **Misleading Advertising Claims Cause Purchase of Products.** RXBAR's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff Castellanos, believing that the Products are free from hidden, highly processed ingredients, and therefore healthier, alternatives to traditional, highly processed protein bars.

82. **Injury in Fact.** Plaintiff Castellanos and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations—namely, Plaintiff Castellanos and the California Subclass lost the unwarranted premium they paid the Products they bought from RXBAR. Specifically, Plaintiff Castellanos and members of the California Subclass paid for Products that contained no hidden, highly processed ingredients.

83. **Conduct Violates the UCL.** RXBAR's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code Section 17200. In addition, RXBAR's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair,

43

deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

84.     **No Reasonably Available Alternatives/Legitimate Business Interests.** RXBAR failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

85.     **Business Practice.** All of the conduct alleged herein occurred and continues to occur in RXBAR's business. RXBAR's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until RXBAR voluntarily alters its conduct or RXBAR is otherwise ordered to do so.

86.     **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff Castellanos and the members of the California Subclass seek an order of this Court enjoining RXBAR from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products.

87.     **Causation/Damages.** As a direct and proximate result of RXBAR's misconduct in violation of the UCL, Plaintiff Castellanos and members of the California Subclass were harmed in the amount of the unwarranted premium they paid for the Products. Specifically, Plaintiff Castellanos and members of the California Subclass paid for Products that contained no hidden, highly processed ingredients. Further, Plaintiff Castellanos and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts of the unwarranted premium paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff

44

Castellanos and members of the California Subclass seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff Castellanos and the California Subclass for said monies, as well as injunctive relief to enjoin RXBAR's misconduct to prevent ongoing and future harm that will result.

88. **Punitive Damages.** Plaintiff Castellanos seeks punitive damages pursuant to this claim for relief for violation of the UCL on behalf of Plaintiff Castellanos and the California Subclass. RXBAR's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. RXBAR's misconduct is malicious as RXBAR acted with the intent to cause Plaintiff Castellanos and consumers to pay for Products that they were not, in fact, receiving. RXBAR willfully and knowingly disregarded the rights of Plaintiff Castellanos and consumers as RXBAR was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff Castellanos. RXBAR's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff Castellanos and consumers to cruel and unjust hardship in knowing disregard of their rights. RXBAR's misconduct is fraudulent as RXBAR intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff Castellanos and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of RXBAR.

**"Unfair" Prong**

89.     **Unfair Conduct.** RXBAR's labeling and advertising of the Products, as alleged herein, constitutes unfair conduct. RXBAR knew or should have known of its unfair conduct. RXBAR's Challenged Representations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

90.     **Injury.** RXBAR's action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by RXBAR's deceptive labeling, packaging, and advertising of the Products. Accordingly, the injuries caused by RXBAR's deceptive labeling and advertising outweigh any benefits.

91.     **No Utility.** Here, RXBAR's conduct of labeling and packaging the Products with the Challenged Representations when the Products in fact contain natural flavors has no utility and financially harms purchasers. Thus, the utility of RXBAR's conduct is vastly outweighed by the gravity of harm.

92.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further RXBAR's legitimate business interests, other than the conduct described herein. RXBAR could have refrained from labeling and packaging the Products with the Challenged Representations.

93.     **Causation/Damages.** Plaintiff Castellanos and members of the California Subclass have suffered injury in fact and have lost money as a result of RXBAR's unfair conduct. Plaintiff Castellanos and members of the California Subclass paid an unwarranted premium for the

Products. Specifically, Plaintiff Castellanos and members of the California Subclass paid for Products that contained no hidden, highly processed ingredients. Plaintiff Castellanos and members of the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' labeling, packaging, and advertising were deceptive. Accordingly, Plaintiff Castellanos and members of the California Subclass seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

94. **Continued Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in RXBAR's business. RXBAR's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

95. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff Castellanos and the California Subclass seek an order of this Court enjoining RXBAR from continuing to engage, use, or employ its practices of labeling and packaging the Products with the Challenged Representations.

### "Fraudulent" Prong

96. **Fraudulent & Material Challenged Representations.** RXBAR used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff Castellanos and the California Subclass. The Challenged Representations are deceptive, and RXBAR knew, or should have known, of their deception. The Challenged Representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

97. **Fraudulent Business Practice.** As alleged herein, the labeling and advertising by RXBAR constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

98.     **Reasonable and Detrimental Reliance.** Plaintiff Castellanos and the California Subclass reasonably and detrimentally relied on the Challenged Representations to their detriment in that they purchased the Products.

99.     **Reasonably Available Alternatives.** RXBAR had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. RXBAR could have refrained from labeling and packaging the Products with the Challenged Representations.

100.    **Causation/Damages.** Plaintiff Castellanos and the California Subclass have suffered injury in fact and have lost money as a result of RXBAR's fraudulent conduct. Plaintiff Castellanos paid an unwarranted premium for the Products. Specifically, Plaintiff Castellanos and the California Subclass paid for Products that were free from hidden, highly processed ingredients, when, in fact, the Products contain the hidden, highly processed ingredient natural flavors. Plaintiff Castellanos and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff Castellanos and members of the California Subclass seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

101.    **Continued Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in RXBAR's business. RXBAR's wrongful conduct is part of a pattern or generalized course of conduct.

102.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff Castellanos and the California Subclass seek an order of this Court enjoining RXBAR from continuing to engage, use, or employ its practice of labeling and packaging the Products with the Challenged Representations.

**"Unlawful" Prong**

103. **Unlawful Conduct.** RXBAR's labeling and advertising of the Products, as alleged herein, constitutes unlawful conduct. RXBAR knew or should have known of its unlawful conduct.

104. **Violations of CLRA and FAL.** RXBAR's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

105. **Fraud.** Additionally, RXBAR's use of the Challenged Representations to sell the Products violates California Civil Code Sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

106. **Additional Violations.** RXBAR's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for RXBAR, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208.

107. **Reasonably Available Alternatives.** RXBAR had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. RXBAR could have refrained from labeling and packaging the Products with the Challenged Representations.

108. **Causation/Damages.** Plaintiff Castellanos and the California Subclass have suffered injury in fact and have lost money as a result of RXBAR's unlawful conduct. Plaintiff Castellanos and the California Subclass paid an unwarranted premium for the Products.

49

Specifically, Plaintiff Castellanos and members of the California Subclass paid for Products that contained no hidden, highly processed ingredients. Plaintiff Castellanos and the California Subclass would not have purchased the Products if they had known that RXBAR purposely deceived consumers into believing that the Products were free from hidden, highly processed ingredients. Accordingly, Plaintiff Castellanos and members of the California Subclass seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

109. **Continued Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in RXBAR's business. RXBAR's wrongful conduct is part of a pattern or generalized course of conduct.

110. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff Castellanos and the California Subclass seek an order of this Court enjoining RXBAR from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

**FOURTH CLAIM FOR RELIEF**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(On Behalf of the California Subclass)**

111. **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

112. **California Subclass.** Plaintiff Castellanos brings this claim individually and on behalf of members of the California Subclass who purchased the Products within the applicable statute of limitations.

113. **Challenged Representations Disseminated to Public.** RXBAR violated Section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and

misleading representations disseminated to the public through the Products' labeling and advertising. The Challenged Representations were unfair, deceptive, untrue, and misleading because the Products do not conform to them. The Challenged Representations were material because they are likely to and did mislead reasonable consumers into purchasing the Products.

114. **Knowledge.** In making and disseminating the Challenged Representations alleged herein, RXBAR knew or should have known that the Challenged Representations were untrue or misleading, and acted in violation of Section 17500.

115. **Intent to sell.** RXBAR's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff Castellanos and the California Subclass, to purchase the Products.

116. **Causation/Damages.** As a direct and proximate result of RXBAR's misconduct in violation of the FAL, Plaintiff Castellanos and members of the California Subclass were harmed in the amount of the unwarranted premium they paid for the Products. Specifically, Plaintiff Castellanos and members of the California Subclass paid for Products that contained no hidden, highly processed ingredients. Further, Plaintiff Castellanos and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff Castellanos and members of the California Subclass seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff Castellanos and the California Subclass for said monies, as well as injunctive relief to enjoin RXBAR's misconduct to prevent ongoing and future harm that will result.

117. **Punitive Damages.** RXBAR's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. RXBAR's misconduct is malicious as RXBAR acted with the intent to cause Plaintiff Castellanos and consumers to pay for Products that they were not, in fact, receiving. RXBAR willfully and knowingly disregarded the rights of Plaintiff Castellanos and consumers as RXBAR was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff Castellanos. RXBAR's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff Castellanos and consumers to cruel and unjust hardship in knowing disregard of their rights. RXBAR's misconduct is fraudulent as RXBAR, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff Castellanos and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of RXBAR.

## FIFTH CLAIM FOR RELIEF

### Violation of California Consumer Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

118. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

119. **California Subclass.** Plaintiff Castellanos brings this claim individually and on behalf of members of the California Subclass who purchased the Products within the applicable statute of limitations.

120. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code Section 1761(a).

121. **RXBAR.** RXBAR is a "person," as defined by the CLRA in California Civil Code Section 1761(c).

122. **Consumers.** Plaintiff Castellanos and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code Section 1761(d).

123. **Transactions.** The purchase of the Products by Plaintiff Castellanos and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

124. **Violations of the CLRA.** RXBAR violated the following sections of the CLRA by selling the Products to Plaintiff Castellanos and members of the California Subclass through misleading, deceptive, and fraudulent Challenged Representations, including:

    a.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

    b.    Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c.    Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

    d.    Section 1770(a)(16) by representing that the Products have "been supplied in accordance with a previous representation" when they have not.

125.   **Knowledge.** RXBAR's use of the Challenged Representations on the Products was likely to deceive, and RXBAR knew or should have known that these representations were misleading.

126.   **Malicious.** RXBAR's conduct is malicious, fraudulent, and wanton in that RXBAR intentionally misled consumers, including Plaintiff Castellanos, to increase the sales of the Products.

127.   **Plaintiff Could Not Have Avoided Injury.** Plaintiff Castellanos and members of the California Subclass could not have reasonably avoided such injury. Plaintiff Castellanos and members of the California Subclass were misled and unaware of the existence of facts that RXBAR suppressed and failed to disclose, and Plaintiff Castellanos and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

128.   **Causation/Reliance/Materiality.** Plaintiff Castellanos and the California Subclass suffered harm as a result of RXBAR's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were together a substantial factor.

129.   **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, Plaintiffs' counsel, acting on behalf of all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Insurgent Brands LLC, d/b/a RXBAR at its headquarters and principal place of business registered with the California Secretary of State (412 N Wells St., Chicago, IL 60654) and its registered agent for service of process (Amanda Garcia, Registered

Agent, 330 N. Brand Blvd., Ste 700, Glendale, CA 91203). The Demand Letter was delivered to each of these addresses on or about May 20, 2024.

130.    **Causation/Damages.** As a direct and proximate result of RXBAR's misconduct in violation of the CLRA, Plaintiff Castellanos and members of the California Subclass were harmed in the amount of the unwarranted premium they paid for the Products. Specifically, Plaintiff Castellanos and members of the California Subclass paid for Products that contained no hidden, highly processed ingredients. Further, Plaintiff Castellanos and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff Castellanos seeks a monetary award for violation of this Act in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff Castellanos and the California Subclass for said monies.

131.    **Injunction.** Given that RXBAR's conduct violated California Civil Code section 1780, Plaintiff Castellanos and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to RXBAR's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by RXBAR's false advertising campaign. Plaintiff Castellanos has no adequate remedy at law. Without equitable relief, RXBAR's unfair and deceptive practices will continue to harm Plaintiff Castellanos and the California Subclass. Accordingly, Plaintiff Castellanos seeks an injunction to enjoin RXBAR from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require RXBAR to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through RXBAR's deceptive labeling of the Products with the Challenged Representations.

132.     **Punitive Damages.** RXBAR's unfair and deceptive conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. RXBAR's misconduct is malicious as RXBAR acted with the intent to cause Plaintiff Castellanos and consumers to pay for Products that they were not, in fact, receiving. RXBAR willfully and knowingly disregarded the rights of Plaintiff Castellanos and consumers as RXBAR was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff Castellanos. RXBAR's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff Castellanos and consumers to cruel and unjust hardship in knowing disregard of their rights. RXBAR's misconduct is fraudulent as RXBAR, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff Castellanos and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of RXBAR. Accordingly, Plaintiff Castellanos seeks an award of punitive damages against RXBAR.

## SIXTH CLAIM FOR RELIEF

### Violation of New York General Business Law § 349

#### *(On Behalf of the New York Subclass)*

133.     **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

134. **New York Subclass.** Plaintiff Wohl brings this claim individually and on behalf of members of the New York Subclass who purchased the Products within the applicable statute of limitations.

135. **Consumer Oriented Conduct.** As set forth herein, RXBAR's conduct was consumer oriented because RXBAR's labeling and advertising was directed toward the general public and otherwise implicates consumer protection concerns.

136. **Deception.** RXBAR's labeling and advertising of the Products, as alleged herein, constitutes deceptive acts and practices. RXBAR used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff Wohl and the New York Subclass. The Challenged Representations are deceptive, and RXBAR knew, or should have known, of their deception because the Challenged Representations were likely to mislead a reasonable consumer acting reasonably under the circumstances.

137. **Causation/Damages.** Plaintiff Wohl and members of the New York Subclass have suffered injury in fact and have lost money as a result of RXBAR's deceptive acts and practices. Plaintiff Wohl and the members of the New York Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff Wohl and members of the New York Subclass paid for Products that contained no hidden, highly processed ingredients. Plaintiff Wohl and members of the New York Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' labeling, packaging, and advertising were deceptive. RXBAR willfully and knowingly engaged in deceptive acts and practices as RXBAR was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid deceiving consumers, including Plaintiff Wohl. Accordingly, Plaintiff Wohl seeks damages, statutory damages, costs, and reasonable attorneys' fees to the extent provided by law.

138.     **Injunction.** Given that RXBAR's conduct violated General Business Law § 349, Plaintiff Wohl and members of the New York Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to RXBAR's violations of New York law and to dispel the public misperception generated, facilitated, and fostered by RXBAR's false advertising campaign. Plaintiff Wohl has no adequate remedy at law. Without equitable relief, RXBAR's deceptive acts and practices will continue to harm Plaintiff Wohl and members of the New York Subclass. Accordingly, Plaintiff Wohl seeks an injunction to enjoin RXBAR from continuing to employ the deceptive acts and practices alleged herein, and otherwise require RXBAR to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through RXBAR's deceptive labeling of the Products with the Challenged Representations.

## SEVENTH CLAIM FOR RELIEF

### Violation of New York General Business Law §§ 350, *et seq.*

### *(On Behalf of the New York Subclass)*

139.     **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

140.     **New York Subclass.** Plaintiff Wohl brings this claim individually and on behalf of members of the New York Subclass who purchased the Products within the applicable statute of limitations.

141.     **Consumer Oriented Conduct.** As set forth herein, RXBAR's conduct was consumer oriented because RXBAR's labeling and advertising was directed toward the general public and otherwise implicates consumer protection concerns.

142.     **False Advertising.** RXBAR's labeling and advertising of the Products, as alleged herein, constitutes false advertising within the meaning of N.Y. G.B.L. § 350-a(1) because the

Challenged Representations are advertising and the labeling of a commodity. RXBAR used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff Wohl and the New York Subclass. The Challenged Representations are misleading in a material respect, and RXBAR knew, or should have known, of their false advertising because the Challenged Representations were likely to mislead a reasonable consumer acting reasonably under the circumstances.

143.    **Causation/Damages.** Plaintiff Wohl and members of the New York Subclass have suffered injury in fact and have lost money as a result of RXBAR's false advertising. Plaintiff Wohl and the members of the New York Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff Wohl and members of the New York Subclass paid for Products that contained no hidden, highly processed ingredients. Plaintiff Wohl and members of the New York Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' labeling, packaging, and advertising constituted false advertising. RXBAR willfully and knowingly engaged in false advertising as RXBAR was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff Wohl. Accordingly, Plaintiff Wohl seeks damages, statutory damages, costs, and reasonable attorneys' fees to the extent provided by law.

144.    **Injunction.** Given that RXBAR's conduct violated General Business Law § 350, *et seq.*, Plaintiff Wohl and members of the New York Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to RXBAR's violations of New York law and to dispel the public misperception generated, facilitated, and fostered by RXBAR's false advertising campaign. Plaintiff Wohl has no adequate remedy at law. Without equitable relief, RXBAR's false advertising will continue to harm Plaintiff Wohl and members of the New York Subclass.

Accordingly, Plaintiff Wohl seeks an injunction to enjoin RXBAR from continuing to employ false advertising as alleged herein, and otherwise require RXBAR to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through RXBAR's false advertising.

## EIGHTH CLAIM FOR RELIEF

**(Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.*)**

***(On Behalf of the Class)***

145. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

146. **The Class.** Plaintiffs bring this claim individually and on behalf of members of the Nationwide Class, the California Subclass, and the New York Subclass, who purchased the Products within the applicable statute of limitations.

147. **Risk of Future Harm**. Declaratory relief is appropriate on behalf of Plaintiffs and members of the Class because RXBAR continues to misrepresent the Products with the Challenged Representations. Declaratory relief is necessary to prevent RXBAR from continuing to engage in the conduct described herein and to prevent future harm. Specifically, Plaintiffs do not possess any specialized knowledge, skill, experience, or education in the use of additives in foods or the manufacturing of protein bars and are unable to determine whether the Products' Challenged Representations are true—i.e., whether the Products are free from hidden, highly processed ingredients as advertised. Plaintiffs thus face a substantial and imminent risk of future harm and will be injured in the future.

148. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** The Court should issue corresponding injunctive relief enjoining RXBAR from engaging in the unlawful

conduct described herein. Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted from years of RXBAR's unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labeling concerning the Products' true nature.

149. **No Adequate Remedy at Law.** Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists. An injunction enjoining RXBAR from engaging in unlawful conduct and/or requiring affirmative disclosures is not available through a legal remedy (such as monetary damages).

150. **No Hardship.** The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to RXBAR if an injunction is issued. Plaintiffs and members of the Class will likely continue to be harmed by RXBAR's unlawful conduct. The cost to RXBAR of complying with an injunction is relatively minimal.

151. **Public Interest.** Issuance of the requested injunction will not disserve the public interest. To the contrary, RXBAR's unlawful conduct was directed towards the general public and consumers in general and has created public misperception about the Products that has resulted from years of RXBAR's unlawful marketing efforts. An injunction would benefit Plaintiffs and the general public by providing them with representations on the Products that are true.

## PRAYER FOR RELIEF

152. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against RXBAR as follows:

a. **Certification:** For an order certifying this action as a class action, certifying the Class, appointing Plaintiffs as the class representatives, and appointing Plaintiffs' counsel as class counsel;

b. **Declaratory Relief:** For an order declaring that RXBAR's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring RXBAR to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that RXBAR immediately cease and desist from selling the unlawful Products in violation of law; that enjoin RXBAR from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require RXBAR to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from RXBAR's unlawful conduct; and/or that require RXBAR to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, nominal damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e.  **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f.  **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g.  **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h.  **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs respectfully demand a trial by jury for all issues so triable.

Dated: February 27, 2025

*/s/ Carey Alexander*
Carey Alexander (Bar #5188461)
**CLARKSON LAW FIRM, P.C.**
260 Madison Avenue, 8th Floor
New York, NY 10016
Tel: (646) 290-6009
Fax: (213) 788-4070
calexander@clarksonlawfirm.com

Ryan J. Clarkson
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Hwy
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070
rclarkson@clarksonlawfirm.com

*Attorneys for Plaintiff*

63