## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MELANIE WOHL and ELENO CASTELLANOS, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>INSURGENT BRANDS LLC D/B/A RXBAR and KELLANOVA,<br><br>   Defendant. | Case No.  1:25-cv-1275<br><br>The Honorable John J. Tharp, Jr. |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
Steven J. Tinetti
stinetti@jenner.com
353 North Clark Street
Chicago, IL 60654
T: (312) 222-9350
F: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
T: (213) 239-5100
F: (213) 239-5199

Attorneys for Defendants
Insurgent Brands LLC and Kellanova

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ALLEGATIONS OF THE COMPLAINT.................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.      Plaintiffs Have Not Plausibly Alleged That the RXBAR Labeling Is Deceptive............... 4

     A.     The phrase "No B.S." is non-actionable puffery. ................................... 5

     B.     The front label does not suggest that the listed ingredients are the *only* ingredients in the product—let alone that the product is free of natural flavors. ..................................................................................... 9

II.     Absent Any Plausible Claim of Deception, Plaintiffs' Ancillary Claims Also Fail......... 13

III.    Plaintiffs Lack Standing to Seek Injunctive Relief........................................... 14

CONCLUSION................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amans v. Tesla, Inc.*,
No. 21-3577, 2022 WL 2952474 (N.D. Cal. July 26, 2022) ...................................................13

*Bates v. Abbott Lab'ys*,
727 F. Supp. 3d 194 (N.D.N.Y. 2024)...................................................................................7

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) ................................................................................................4

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..........................................................................................4, 5

*Biczo v. Ferrara Candy Co.*,
No. 22-1967, 2023 WL 2572384 (N.D. Ill. Mar. 20, 2023) ..................................................5

*Brodsky v. Aldi Inc.*,
No. 20-7632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021) ................................................13

*Brown v. Madison Reed, Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022) ................................................................................6, 7

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ................................................................................................3

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ..............................................................................................15

*Castaneda v. Amazon.com, Inc.*,
679 F. Supp. 3d 739 (N.D. Ill. 2023) ................................................................................7, 8

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ..............................................................................................14

*Daniel v. Mondelēz Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................................11

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).................................................................................................4

*Forth v. Walgreen Co.*,
No. 17-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) ..................................................14

*Freeman v. MAM USA Corp.*,
    528 F. Supp. 3d 849 (N.D. Ill. 2021) ...................................................................15

*Gardner v. Ferrara Candy Co.*,
    No. 22-1272, 2023 WL 4535906 (N.D. Ill. Mar. 22, 2023) ...................................5

*Geske v. PNY Techs., Inc.*,
    503 F. Supp. 3d 687 (N.D. Ill. 2020) ...................................................................15

*Gudgel v. Clorox Co.*,
    514 F. Supp. 3d 1177 (N.D. Cal. 2021) ...............................................................14

*Hicken v. Quaker Oats Co.*,
    No. 22-6043, 2024 WL 4953783 (N.D. Ill. Dec. 2, 2024)................................9, 10

*Jackson v. Kraft Heinz Foods Co.*,
    No. 21-5219, 2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) ....................................10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..............................................................................13

*Keesler v. Electrolux Home Prods., Inc.*,
    No. 16-199, 2016 WL 3940114 (N.D. Ill. July 21, 2016) ......................................14

*Kennedy v. Mondelēz Global LLC*,
    No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020).....................................14

*Lugones v. Pete & Gerry's Organic, LLC*,
    440 F. Supp. 3d 226 (S.D.N.Y. 2020).....................................................................5

*O'Connor v. Ford Motor Co.*,
    567 F. Supp. 3d 915 (N.D. Ill. 2021) ......................................................................6

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ................................................................................15

*PETA v. Whole Foods Mkt. Cal., Inc.*,
    No. 15-4301, 2016 WL 1642577 (N.D. Cal. Apr. 26, 2016)....................................8

*Sanchez v. Navy Fed. Credit Union*,
    No. 23-285, 2023 WL 6370235 (C.D. Cal. Aug. 14, 2023) ...................................13

*Simic v. City of Chicago*,
    851 F.3d 734 (7th Cir. 2017) ................................................................................14

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976).................................................................................................15

*Spector v. Mondelēz Int'l, Inc.*,
  178 F. Supp. 3d 657 (N.D. Ill. 2016) ...................................................................8

*Steele v. Wegmans Food Mkts.*,
  472 F. Supp. 3d 47 (S.D.N.Y. 2020)....................................................................12

*Walcoff v. Innofoods USA, Inc.*,
  No. 22-1485, 2023 WL 3262940 (S.D. Cal. May 4, 2023) ....................................6

*Wallace v. Wise Foods, Inc.*,
  No. 20-6831, 2021 WL 3163599 (S.D.N.Y. July 26, 2021)..................................12

*Warth v. Seldin*,
  422 U.S. 490 (1975)..............................................................................................15

*Weaver v. Champion Petfoods USA, Inc.*,
  3 F.4th 927 (7th Cir. 2021) ....................................................................................9

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011)....................................................................5

*Weiss v. Trader Joe's Co.*,
  838 F. App'x 302 (9th Cir. 2021) .........................................................................11

*Welk v. Beam Suntory Import Co.*,
  124 F. Supp. 3d 1039 (S.D. Cal. 2015)..................................................................5

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) .................................................................9

*Zahora v. Orgain LLC*,
  No. 21-705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ....................................11

**Statutes**

28 U.S.C. §§ 2201 *et seq.*...........................................................................................4

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................................................................4

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ...................................................................4

Cal. Civ. Code §§ 1750 *et seq.*...................................................................................4

N.Y. G.B.L. § 349.........................................................................................................4

N.Y. G.B.L. § 350.........................................................................................................4

**Other Authorities**

21 C.F.R. § 101.4 ................................................................................................................11

21 C.F.R. § 101.22 ..............................................................................................................3

**INTRODUCTION**

Insurgent Brands manufactures RXBARs, which are made with simple, nutrient-dense ingredients like egg whites, dates, and nuts. Insurgent Brands truthfully highlights the presence of these ingredients by listing them on the front label, along with the statement "No B.S." Plaintiffs do not dispute that each RXBAR contains every one of the ingredients listed on the front label. Instead, they allege that the statement "No B.S.," combined with the abbreviated ingredient list on the front label, is misleading because it falsely suggests that each RXBAR consists *only* of the ingredients listed on the front label and is free of other ingredients, including natural flavors. Plaintiffs' theory of deception is not remotely plausible, and this Court should dismiss their lawsuit.

Plaintiffs' lawsuit fails at the outset because "No B.S." is puffery. According to Plaintiffs, consumers understand the phrase "No. B.S." to mean "No Bullshit" or "No Bad Stuff." *See* First Am. Compl. ("FAC") ¶¶ 5–6. But regardless of how a consumer might interpret the phrase "No B.S.," it is not a specific, quantifiable, or objective statement about a product—let alone one that implies the absence of specific ingredients, such as natural flavors. Courts routinely dismiss lawsuits based on fanciful interpretations of puffery statements. This Court should do the same.

Plaintiffs also allege that reasonable consumers interpret the list of ingredients on the front label to mean that these are the *only* ingredients in each RXBAR. But any reasonable consumer who has stepped foot in a grocery store knows that the front label does not list every ingredient. That information appears on the back or side label, where the FDA requires manufacturers to list every ingredient in order of predominance and where consumers know to look for a complete list of ingredients. Indeed, Plaintiffs' "ingredient list" theory is particularly implausible because no reasonable consumer would believe that a fruit- or chocolate-flavored RXBAR would consist solely of dates, nuts, and egg whites. Courts around the country—including the Seventh Circuit—

have rejected the notion that highlighting one ingredient on a label implies the absence of other ingredients. That commonsense principle forecloses Plaintiffs' implausible theory of deception.

These flaws are fatal to all of Plaintiffs' claims, including their statutory claims under New York and California law, their ancillary claims for breach of warranty and unjust enrichment, and their claim under the Declaratory Judgment Act. And even if Plaintiffs *could* state a plausible claim, they lack standing to seek an injunction because they are now aware that RXBARs contain natural flavors—which means there is no risk that they will be "deceived" in the future. Plaintiffs' theory of deception is flawed beyond repair, and this Court should dismiss this case with prejudice.

## **ALLEGATIONS OF THE COMPLAINT**

RXBARs come in "distinctive packaging and front labels," which contain a "short list of ingredients followed by the statement 'No B.S.'" FAC ¶ 3. Each label also identifies the product's flavor, such as Blueberry, Strawberry, or Chocolate Sea Salt, at the bottom of the label. *See id.* Notably, the ingredients listed on the front label often exclude the ingredient that provides the product with its signature flavor, such as blueberries, strawberries, or chocolate. *See id.* Consistent with the FDA regulations, the back label lists all of the product's ingredients, including natural flavors. A representative example appears below:




2

*See* Smith Decl. Ex. 1 (highlighting added); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion into a motion for summary judgment.").

Plaintiffs do not dispute that the ingredients listed on the front label—such as egg whites, almonds, cashews, and dates—are present in each RXBAR. Instead, Plaintiffs allege that the statement "No B.S." is misleading because the products contain "natural flavors," which Plaintiffs characterize as an "unspecified and highly processed black box ingredient."[1] FAC ¶¶ 7–8. Although the FDA regulations specifically distinguish between "natural flavors" and "artificial flavors" (*compare* 21 C.F.R. § 101.22(a)(1) *with* 21 C.F.R. § 101.22(a)(3)), Plaintiffs characterize natural flavors as "synthetically and artificially derived" and "highly processed food additives." FAC ¶¶ 35–36. And because consumers allegedly interpret the phrase "No B.S." to suggest that "the Products are free from hidden, highly processed ingredients" (*id.* ¶ 39), Plaintiffs allege that the presence of natural flavors in the products renders the "No B.S." claim deceptive.

In addition to challenging the phrase "No B.S.," Plaintiffs also allege that the labeling is deceptive because the "short list of ingredients on the front label" falsely suggests that "the Products contain only whole ingredients—namely those appearing on the front label—to the exclusion of any hidden or highly processed ingredients, such as natural flavoring or other additives." FAC ¶¶ 26, 28. As the labels Plaintiffs include in their complaint make clear, this "short list" does not include the ingredient—such as blueberries, strawberries, or chocolate—that

---

[1] Although Plaintiffs characterize "natural flavors" as an "unspecified" and "black box" ingredient, the FDA regulations do not require manufacturers to specify the source or composition of natural flavors on the labeling. Rather, they expressly permit manufacturers to use the term "natural flavors." *See* 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or 'artificial flavor,' or any combination thereof, as the case may be.").

provides each product with its signature flavor. *See id.* ¶ 3. And Plaintiffs do not (and cannot) dispute that the back label lists all ingredients in each product, including natural flavors.

Based on these allegations, Plaintiffs assert claims for: (1) breach of warranty; (2) unjust enrichment; (3) violations of California's consumer fraud statutes, including the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (4) violations of sections 349 and 350 of the New York General Business Law; and (5) declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq. See* FAC ¶¶ 62–151. Plaintiffs assert these claims on behalf of a putative nationwide class, as well as putative California and New York subclasses. *See id.* ¶ 51.

## ARGUMENT

### I. Plaintiffs Have Not Plausibly Alleged That the RXBAR Labeling Is Deceptive.

To state a claim under California or New York's consumer fraud statutes, Plaintiffs must plausibly allege that the products' labeling is "likely to mislead a reasonable consumer acting reasonably under the circumstances."[2] *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (discussing New York law); *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (noting that claims under California law are governed by the "reasonable consumer" standard, under which a plaintiff "must show that members of the public are likely to be deceived"); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (noting that the "consumer protection statutes [of] twelve different states," including California and New York, "all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers").

---

[2] Unless noted, all citations and internal quotation marks are omitted.

This standard demands more than a "mere possibility" that a label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Becerra*, 945 F.3d at 1228; *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (noting that the "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled"). And because this standard hinges on how reasonable consumers would interpret the labeling, "it is not enough to allege that the product misled a particular plaintiff." *Gardner v. Ferrara Candy Co.*, No. 22-1272, 2023 WL 4535906, at *3 (N.D. Ill. Mar. 22, 2023). "What matters is how a *reasonable* consumer would read the packaging." *Id.* (emphasis added). Viewed through this lens, Plaintiffs have not come close to stating a plausible claim of deception.

### A. The phrase "No B.S." is non-actionable puffery.

The crux of Plaintiffs' lawsuit is that the phrase "No B.S." is misleading because it falsely suggests that each RXBAR contains only the ingredients listed on the front label "and nothing hidden." FAC ¶¶ 4–5. Plaintiffs allege that this phrase implies that RXBARs are free of natural flavors, which are purportedly "a notoriously 'bad' and markedly un-transparent ingredient." *Id.* ¶ 7. But this four-letter phrase is nothing more than textbook puffery. It is not an affirmative representation that RXBARs are free of any specific ingredient, including natural flavors.

In contrast to a "specific or measurable claim," like "100 calories" or "no added sugar," a "subjective description of quality" is non-actionable puffery. *Biczo v. Ferrara Candy Co.*, No. 22-1967, 2023 WL 2572384, at *3 (N.D. Ill. Mar. 20, 2023); *see also, e.g.*, *Welk v. Beam Suntory Import Co.*, 124 F. Supp. 3d 1039, 1043 (S.D. Cal. 2015) (noting that "generalized, vague, and unspecified assertions constitute mere puffery"); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (distinguishing "concrete representations," which may be actionable, from "subjective claims about products, which cannot be proven either true or false"). In other words, "[s]tatements of puffery are so vague as to leave the standards for interpretation

open to a number of plausible criteria for judgment, and not capable of precise measuring, such that a reasonable consumer would not rely on them." *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 962 (N.D. Ill. 2021). These commonsense principles are fatal to Plaintiffs' lawsuit.

It is difficult to envision a clearer example of puffery than "No B.S." Whether one defines this statement to mean "No Bullshit," "No Bad Stuff," or something else entirely, it is not a phrase that has a specific, objective, or concrete definition. Even if one credits Plaintiffs' allegation that this statement generally refers to the absence of "bad" ingredients, there is no objective benchmark that defines whether an ingredient is "bad." As a result, the statement "No B.S." is nothing more than a "product superiority claim[] that no reasonable consumer would take as anything more weighty than an advertising slogan." *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 803 (N.D. Cal. 2022); *see also Walcoff v. Innofoods USA, Inc.*, No. 22-1485, 2023 WL 3262940, at *9 n.11 (S.D. Cal. May 4, 2023) (dismissing claim that the defendant mislabeled its chocolate with the phrase "no funny stuff" and finding that this claim was "generalized, vague, and unspecified").

*Brown* is directly on point. There, the plaintiffs alleged that the defendant deceptively marketed its hair care products as "gentler, safer, and healthier," even though they allegedly contained harmful chemicals. 622 F. Supp. 3d at 794. The plaintiffs challenged not only specific statements, such as "free of ammonia," but also statements like "Ingredients with Integrity," "Salon Gorgeous," and "Salon-quality." *Id.* at 802. The court found that these statements were non-actionable puffery because they were "neither specific nor measurable" and "make no factual representations." *Id.* "Although a reasonable consumer might rely on the factual representation that the products were 'free of' certain ingredients," the court explained, "she would recognize the remaining statements—that the products were 'Salon Gorgeous,' 'Salon-quality,' or used

'Ingredients with Integrity'—as vague product superiority claims that no reasonable consumer would take as anything more weighty than an advertising slogan." *Id.*

Similarly, in *Bates v. Abbott Laboratories*, the plaintiff challenged the defendant's representation that its protein shakes provided "complete" and "advanced" nutrition. 727 F. Supp. 3d 194, 204 (N.D.N.Y. 2024). The plaintiff alleged that these terms were misleading because they "indicate that the drinks are healthy even though they contain added sugar." *Id.* at 215. The court dismissed this claim and found that these statements were non-actionable puffery. *See id.* As the court explained, "[t]hose statements are not simple statements of fact which can be shown to be true or false." *Id.* at 216. "[I]nstead," the court reasoned, they were "claims about the relative value of the product which are broad and commendatory." *Id.* Because these terms were "general claim[s] of superiority," the court found that they did "not represent the sort of measurable product claim that could support a cause of action under the relevant statutes." *Id.*

The same is true here. Just as in *Brown* and *Bates*, Plaintiffs' claims are premised on the presence of a substance—natural flavors—that Plaintiffs view as inconsistent with the labeling. And just as in *Brown* and *Bates*, the statement "No B.S." is not a specific, concrete, or objective representation that the product contains only specific ingredients or that it is free of natural flavors. Instead, the phrase "No B.S." is "vague, generalized, and subjective" statement "that no reasonable consumer would take as anything more weighty than an advertising slogan." *Brown*, 622 F. Supp. 3d at 802. This statement "can't be tested," "can't be verified," and therefore "can't be false." *Castaneda v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 750 (N.D. Ill. 2023).

Plaintiffs attempt to head off this result by including several screenshots of product reviews from consumers who view the "No B.S." claim as inconsistent with the presence of natural flavors. *See* FAC ¶ 40. But the fact that these consumers complained about the presence of natural flavors,

which Insurgent Brands discloses in the ingredient list, underscores that natural flavors are not "hidden" from consumers—even though that adjective appears fifty times in Plaintiffs' complaint. Just as importantly, these cherry-picked reviews do not change the fact that the statement "No B.S." has no objective or verifiable meaning. After all, as Judge Seeger noted, "[i]t's not hard to find bad reviews, even for good or great products." *Castaneda*, 679 F. Supp. 3d at 754. And the fact that a product does not satisfy a consumer's subjective expectations does not mean it is mislabeled.

Consider, for example, a product labeled "delicious." A consumer who bought such a product and disliked its taste might feel as if she were misled. But because statements about a product's taste are inherently subjective and impossible to measure, they are not actionable as a matter of law. *See, e.g.*, *PETA v. Whole Foods Mkt. Cal., Inc.*, No. 15-4301, 2016 WL 1642577, at *4 (N.D. Cal. Apr. 26, 2016) (noting that "taste representations," such as "great tasting meat from healthy animals," are non-actionable puffery). The same is true of "No B.S.," which is a subjective and unverifiable statement that lacks any concrete definition. Even if *some* consumers may have interpreted this phrase to suggest the absence of natural flavors, that does not change the fact that it is puffery—which means it cannot give rise to a plausible claim of deception.

Nor can Plaintiffs evade dismissal by tying Insurgent Brands's "No B.S." claim to "additional advertising claims on its website, rxbar.com." FAC ¶ 6. Neither Plaintiff alleges that she visited this website, and both Plaintiffs allege only that they relied on "the Challenged Representations *on the Products' labeling*." *Id.* ¶¶ 17(c), 18(c) (emphasis added). That precludes Plaintiffs from challenging these statements, as a plaintiff cannot sue a defendant for consumer fraud "based on [a] website" when she "does not allege that she ever saw the . . . claim on that website." *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 666 (N.D. Ill. 2016). In any event, even if Plaintiffs *had* visited the RXBAR website, the statements they cite—like "no bad stuff,"

"we don't cut corners," and "[w]e tell you what's on the inside on the outside"—are classic puffery, just like "No B.S." *See* FAC ¶ 25. Nothing about this website salvages Plaintiffs' claims.

**B. The front label does not suggest that the listed ingredients are the *only* ingredients in the product—let alone that the product is free of natural flavors.**

Plaintiffs also allege that the front label, which highlights the presence of nutritious ingredients like egg whites, dates, and nuts, falsely suggests that "the Products contain only whole ingredients—namely those appearing on the front label—to the exclusion of any hidden or highly processed ingredients, such as natural flavoring or other additives." FAC ¶ 28. But this theory fares no better, as it ignores the well-settled principle that "references to ingredients used do not imply that ingredient is used exclusively." *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 937 (7th Cir. 2021) (collecting cases). As one court noted, "[o]ne can hardly walk down the aisles of a supermarket without viewing large pictures depicting vegetable or fruit flavors, when the products themselves are largely made up of a different base ingredient. Every reasonable shopper knows that the devil is in the details." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015). Many courts have applied this principle to reject virtually identical claims of deception.

*Hicken v. Quaker Oats Co.* is instructive. There, the plaintiff alleged that the labeling of Quaker's "Simply Granola"—which listed "Oats, Honey, Raisins & Almonds" on the front label— was "misleading because consumers expect, supposedly based on the front label's use of the word 'simply' before the word 'granola,' that the product will contain *only* oats, honey, raisins, and almonds." No. 22-6043, 2024 WL 4953783, at *1 (N.D. Ill. Dec. 2, 2024) (emphasis in original). Judge Chang dismissed this lawsuit and found that the plaintiffs' "proposed interpretation of the product label is unreasonable." *Id.* at *2. As Judge Chang explained, granola "is not a kind of food that has a designated and agreed upon ingredient list that any reasonable consumer would understand based on the phrase 'simply granola.'" *Id.* "And even assuming there were such a

9

commonly understood ingredient list," Judge Chang continued, "using the word 'simply' to describe the granola does not mean, when viewed from the perspective of a reasonable consumer, that the ingredients would be limited to that front-of-the-package list." *Id.*

Similarly, in *Jackson v. Kraft Heinz Foods Co.*, the plaintiff alleged that Kraft Heinz misled consumers by describing its pizza-flavored Bagel Bites as "mini bagels with mozzarella, cheddar, Monterey Jack cheeses and tomato sauce." No. 21-5219, 2022 WL 4591749, at *1 (N.D. Ill. Aug. 3, 2022). She alleged that "[t]hese statements are deceptive . . . because they omit that the Product's cheese blend and sauce also contain additives and thickening agents." *Id.* at *3. Judge Norgle dismissed her lawsuit. As Judge Norgle explained, "any consumer would at first glance of the Product know that it is not pure mozzarella cheese or tomato sauce, but a frozen pizza bagel containing various other ingredients." *Id.* That fact foreclosed the plaintiff's suggestion that "a reasonable consumer expects pure (*i.e.*, without additives) mozzarella or tomato sauce when buying a bite-size frozen pizza bagel," and it found this reading of the label "fanciful." *Id.*

Here too, no reasonable consumer would construe the front label of an RXBAR to suggest that the highlighted ingredients are the *only* ingredients in the product—let alone that the product was free of natural flavors or any other ingredient. And as unreasonable as that interpretation would be in a vacuum, it is even more unreasonable here because the "short list" of ingredients on the front label often omits the ingredient that provides each RXBAR with its defining flavor.

For example, the front label of Blueberry RXBARs highlights the presence of almonds, egg whites, cashews, and dates, but not blueberries. *See* FAC ¶ 3. The "ingredient list" on the front label of the Chocolate Sea Salt RXBAR does not include chocolate or sea salt. *See id.* Common sense dictates that these flavors come from ingredients other than nuts, egg whites, or dates—which means that a reasonable consumer could not construe the front label to reflect an

10

exhaustive list of each product's ingredients. *See Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[A] reasonable consumer does not check her common sense at the door of the store."); *Daniel v. Mondelēz Int'l, Inc.*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018) (noting that a "reasonable consumer does not lack common sense"). If a reasonable consumer wanted to know every ingredient in the product, he or she would know to look on the side or back label, which is the place where the FDA requires manufacturers to list every ingredient in the product. *See* 21 C.F.R. § 101.4(a)(1). That ingredient list would confirm that each RXBAR contains natural flavors—which is entirely consistent with the abbreviated list of ingredients on the front label.

Plaintiffs attempt to avoid this outcome by characterizing the listed ingredients as "base ingredients" and the flavor designation at the bottom of each label as a list of "flavor ingredients." FAC ¶ 27. But this makes no sense. Reasonable consumers understand the distinction between a flavor (such as "blueberry") and an ingredient (such as blueberries). The images Plaintiffs depict in their complaint make clear that the flavor designation is in a different font on a different part of the label, which signals to reasonable consumers that it is a flavor rather than an extension of the ingredient list. *See* FAC ¶ 3. And Plaintiffs' reading of the flavor designation as a list of "flavor ingredients" is particularly implausible because several of the products at issue—such as "Pumpkin Spice" and "Gingerbread"—are well-known *flavors*, rather than ingredients. *See id.* ¶ 38. No reasonable consumer would interpret the flavor designation as a representation about the product's ingredients, let alone as a representation that the product does not contain natural flavors.

Indeed, courts throughout the country routinely dismiss lawsuits in which plaintiffs claim that representations about a product's *flavor* falsely imply that the flavor is (or is not) derived from specific *ingredients*. *See, e.g.*, *Zahora v. Orgain LLC*, No. 21-705, 2021 WL 5140504, at *5 (N.D. Ill. Nov. 4, 2021) (collecting cases in which "[n]umerous other courts have dismissed challenges

11

to the use of the word 'vanilla' on food labels on the basis that there is nothing in the word 'vanilla' itself that would lead a reasonable consumer to understand a product's vanilla flavor to be derived mostly or exclusively from the vanilla bean"). In *Wallace v. Wise Foods, Inc.*, for example, the plaintiff claimed that the defendant's "Cheddar and Sour Cream Flavored" potato chips were mislabeled because the chips also contained "artificial diacetyl, a compound that mimics or bolsters the 'characteristic' buttery aroma of sour cream." No. 20-6831, 2021 WL 3163599, at *1 (S.D.N.Y. July 26, 2021). The court dismissed this lawsuit. In so holding, the court noted that there was no dispute that "the chips do taste like cheddar and sour cream," and it emphasized that "[n]othing in the label states or implies that the chips' flavor is derived entirely from cheddar and sour cream." *Id.* at *2. Ultimately, the court concluded, a "reasonable consumer would not make broad assumptions about the chips' ingredients based on the representation that they are cheddar and sour cream *flavored*." *Id.* (emphasis in original).

The same is true here. Far from representing that the flavor of each RXBAR is derived from specific ingredients as opposed to natural flavors, the flavor designation at the bottom of the label simply informs consumers what each RXBAR tastes like and helps them distinguish between the many distinct flavors of RXBARs. *See Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select[] from many choices (chocolate, lemon, mint, lime. etc.) the one he wants. Thus the large-type 'Vanilla' is of immediate use."). No reasonable consumer would interpret the flavor designation as a representation about the *source* of the product's flavor—let alone as a representation that the product was free of natural flavors. Absent any plausible allegation that reasonable consumers would construe the front label as a comprehensive ingredient list or as a representation about the source of the product's flavor, Plaintiffs have not stated a plausible claim.

12

## II.      Absent Any Plausible Claim of Deception, Plaintiffs' Ancillary Claims Also Fail.

In addition to their claims of deception under California and New York law, Plaintiffs also assert claims under the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL"), claims for breach of warranty and unjust enrichment, and a claim under the Declaratory Judgment Act. These claims all fail absent any plausible allegation that the labeling is deceptive.

**UCL Claims.** California's UCL prohibits any "unlawful," "unfair," or "fraudulent" act or practice, and "[e]ach prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). But while Plaintiffs purport to assert claims under the "unlawful" and "unfair" prongs of the UCL, these claims are simply repackaged versions of their claim that the labeling is "fraudulent." *See* FAC ¶ 89–90 (alleging that the labeling is "unfair" because the "injuries caused by RXBAR's deceptive labeling and advertising outweigh any benefits"); *id.* ¶¶ 103, 105 (alleging that the labeling is "unlawful" because it constitutes "actual fraud," "constructive fraud," "fraudulent deceit," and "deceit upon the public").

When a plaintiff's claims under the "fraudulent," "unfair," and "unlawful" prongs of the UCL rely on the same allegations of fraud, the court can dismiss those claims if the plaintiff's underlying allegations of fraudulent conduct are implausible. *See Amans v. Tesla, Inc.*, No. 21-3577, 2022 WL 2952474, at *2 (N.D. Cal. July 26, 2022) (dismissing claim under the UCL's "unfair" prong because it relied on the "same theory of fraud" as the plaintiff's claims under the "fraudulent" prong of the UCL and the CLRA); *Sanchez v. Navy Fed. Credit Union*, No. 23-285, 2023 WL 6370235, at *10 (C.D. Cal. Aug. 14, 2023) (similar). Here too, absent any plausible claim of deception, Plaintiffs' claims under the "unlawful" and "unfair" prongs also fail.

**Common-Law Claims.** When a plaintiff asserts that the defendant's supposedly false advertising constitutes a breach of warranty, she cannot prevail on that claim unless she establishes that the labeling is likely to mislead reasonable consumers. *See, e.g., Brodsky v. Aldi Inc.*, No. 20-

13

7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (dismissing breach-of-warranty claims after finding that "a reasonable consumer could not plausibly read the label as plaintiffs suggest"); *Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020) (finding that the standard governing a breach of express warranty claim "is the same as that analyzed under New York's consumer protection law"). The same is true of a claim for unjust enrichment, which "will stand or fall" with the plaintiff's underlying claim of deception. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021) (similar). Absent any plausible allegation that the front label is deceptive, Plaintiffs' common-law claims necessarily fail as well.

**Declaratory Judgment Act**. Finally, Plaintiffs assert a claim under the Declaratory Judgment Act in which they seek declaratory and injunctive relief. *See* FAC ¶¶ 145–151. But it is well-settled that "the federal Declaratory Judgment Act . . . provides only a form of relief, not an independent claim for relief." *Keesler v. Electrolux Home Prods., Inc.*, No. 16-199, 2016 WL 3940114, at *3 (N.D. Ill. July 21, 2016). The prospective relief Plaintiffs seek is also unavailable absent any allegation that Plaintiffs face a likelihood of future harm. *See infra* § III. And even if Plaintiffs *could* overcome these hurdles, they are not entitled to the declaration they seek because they have not plausibly alleged that any aspect of the labeling is deceptive.

## III.   Plaintiffs Lack Standing to Seek Injunctive Relief.

Even if their claims were plausible (which they are not), Plaintiffs lack standing to seek injunctive relief. To have standing to pursue injunctive relief, Plaintiffs must allege that they face "a real and immediate threat of *future* injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (emphasis added). "The general rule is that consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice." *Forth v. Walgreen Co.*, No. 17-2246, 2018

14

WL 1235015, at *14 (N.D. Ill. Mar. 9, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014)).  That principle is fatal to Plaintiffs' request for injunctive relief.

Although Plaintiffs allege that "RXBAR continues to misrepresent the Products with the Challenged Representations" (FAC ¶ 50), their filing of this lawsuit confirms that they are "now aware" that RXBARs contain natural flavors.  *Camasta*, 761 F.3d at 741.  Even if Insurgent Brands continues to label the products with the phrase "No B.S.," that is beside the point.  Because *Plaintiffs* are "not likely to be harmed . . . in the future," they lack standing to seek injunctive relief.  *Id.*; *see also, e.g.*, *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 703 (N.D. Ill. 2020) ("Plaintiffs . . . who allege that they were deceived in the past—but have not alleged any likelihood of being deceived in the future—do not have standing to seek an injunction under Article III.").

The fact that Plaintiffs purport to represent a class of consumers does not change this result.  The Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members."  *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002).  Rather, the "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).  Even if *other* consumers may not know that RXBARs contain "natural flavors," the "risk of future harm to proposed class members" does not give Plaintiffs Article III standing.  *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021).  At a minimum, this Court should dismiss Plaintiffs' lawsuit to the extent it seeks injunctive relief.

## **CONCLUSION**

This Court should dismiss Plaintiffs' lawsuit with prejudice and without leave to amend.

Dated: April 8, 2025                                Respectfully submitted,

                                                 By:  /s/ Dean N. Panos
                                                     Dean N. Panos
                                                     dpanos@jenner.com
                                                     Steven J. Tinetti
                                                     stinetti@jenner.com
                                                     Jenner & Block LLP
                                                     353 North Clark Street
                                                     Chicago, IL 60654
                                                     T: (312) 222-9350
                                                     F: (312) 527-0484

                                                     Alexander M. Smith
                                                     asmith@jenner.com
                                                     Jenner & Block LLP
                                                     515 South Flower Street, #3300
                                                     Los Angeles, CA 90071
                                                     T: (213) 239-5100
                                                     F: (213) 239-5199

                                                     Attorneys for Defendants
                                                     Insurgent Brands LLC and Kellanova

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on April 8, 2025 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  April 8, 2025                      By: _____ /s/ Dean N. Panos_____
                                                  Dean N. Panos

17