# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | |
|---|---|
| MELANIE WOHL and ELENO CASTELLANOS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>INSURGENT BRANDS LLC D/B/A RXBAR and KELLANOVA,<br><br>        Defendants. | Case No.: 1:25-cv-01275<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>The Honorable John J. Tharp, Jr. |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................2

III.  ARGUMENT ..........................................................................................................4

      A.  Plaintiffs Allege Actionable Misrepresentations ......................................5

      B.  The RXBAR Back Label Does Not Cure the Front Label Deception ....................9

      C.  There is no Basis to Dismiss Plaintiffs' Ancillary Claims ....................................14

      D.  Plaintiffs Adequately Allege Standing to Seek Injunctive Relief.........................14

IV.  LEAVE TO AMEND ............................................................................................15

V.   CONCLUSION.....................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,*
    377 F.3d 682 (7th Cir.2004) ...........................................................................15

*Bates v. Abbott Laboratories,*
    727 F.Supp.3d 194 (N.D.N.Y. 2024) ................................................................8

*Bell v. Publix Super Mkts., Inc.,*
    982 F.3d 468 (7th Cir. 2020) ................................................................. *passim*

*Beardsall v. CVS Pharmacy, Inc.,*
    953 F.3d 969 (7th Cir. 2020) ...........................................................................11

*Biczo v. Ferrara Candy Co., No. 22-1967,*
    2023 U.S. Dist. LEXIS 46294 (N.D. Ill. Mar. 20, 2023)....................................8

*Brown v. Madison Reed, Inc.,*
    622 F.Supp.3d 786 (N.D. Cal. 2022) ................................................................6

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014) ...........................................................................14

*Catilina Nominees Proprietary, Ltd. v. Stericycle, Inc.,*
    No. 15-cv-10734, 2021 U.S. Dist. LEXIS 58100 (N.D. Ill. Mar. 26, 2021*)* .......................6

*Chacanaca v. Quaker Oats Co.,*
    752 F.Supp.2d 1111 (N.D. Cal. 2010) ...........................................................7,8

*Dumont v. Reily Foods Co.,*
    934 F.3d 35 (1st Cir. 2019)..........................................................................10,11

*Evans v. Civitas Educ. Partners, LLC,*
    No. 22-3842, 2024 U.S. Dist. LEXIS 184910 (N.D. Ill. Oct. 9, 2024) .............15

*Gamino v. Spin Master, Inc.,*
    No. 23-2242-DMG, 2025 U.S. Dist. LEXIS 69898 (C.D. Cal. March 31, 2025) .............15

*Geske v. PNY Techs., Inc.*

    503 F.Supp.3d 687 (N.D. Ill. 2020) ................................................................14

*Hicken v. Quaker Oats Co.,*

    No. 22-6043, 2024 U.S. Dist. LEXIS 217324 (N.D. Ill. Dec. 2, 2024)............................12

*In re Herbal Supplements Mktg. and Sales Practices Litig.,*

    2017 U.S. Dist. LEXIS 76207 (N.D. Ill. 2017) ................................................14

*Int'l Aerobatics Club Chptr. 1 v. City of Morris,*

    76 F.Supp.3d 767 (N.D. Ill. 2014) ................................................................10

*Jackson v. Kraft Heinz Foods Co.*

    No. 21-5219, 2022 U.S. Dist. LEXIS 180673 (N.D. Ill. Aug. 3, 2022) ............................12

*Lake v. Unilever U.S., Inc.,*

    964 F.Supp.2d 893 (N.D. Ill. 2013) ................................................................8

*Lugones v. Pete & Gerry's Organic, LLC,*

    440 F.Supp.3d 226 (S.D.N.Y. 2020)................................................................8

*Mantikas v. Kellogg Co.,*

    910 F.3d 633 (2d Cir. 2018)................................................................4,10,11

*O'Connor v. Ford Motor Co.,*

    567 F.Supp.3d 915 (N.D. Ill. 2021) ................................................................8

*Reid v. Unilever U.S., Inc.,*

    964 F.Supp.2d 893 (N.D. Ill. 2013) ................................................................7

*Salazar v. Walmart, Inc.,*

    83 Cal.App.5th 561 (2022) ................................................................5

*Steele v. Wegmans Food Mkts.,*

    472 F.Supp.3d 47 (S.D.N.Y. 2020) ................................................................14

*Stuve. v. Kraft Heinz Co.,*

    No. 21-1845, 2023 U.S. Dist. LEXIS 6184 at *33 (N.D. Ill. Jan. 12, 2023) ......................7

*Strow v. B&G Foods, Inc.*,

    633 F.Supp.3d 1090 (N.D. Ill. 2022) ................................................................13

*Terrazzino v. Wal-Mart Stores, Inc.*,

    335 F.Supp.3d 1074 (N.D. Ill. 2018) ................................................................10

*Verizon Directories Corp. v. Yellow Book USA, Inc.*,

    309 F.Supp.2d 401 (E.D.N.Y. 2004) ..................................................................7

*Wallace v. Wise Foods, Inc.*,

    No. 20-6831, 2021 U.S. Dist. LEXIS 138910 (S.D.N.Y. July 26, 2021) .........................14

*Walcoff v. Innofoods USA, Inc.*,

    No. 22-1485, 2023 U.S. Dist. LEXIS 78474 (S.D. Cal. May 4, 2023)...............................9

*Weaver v. Champion Petfoods USA, Inc.*,

    3 F.4th 927 (7th Cir. 2021) ..............................................................................12

*Welk v. Beam Suntory Import Co.*,

    124 F. Supp. 3d 1039 (S.D. Cal. 2015)...............................................................9

*Whiteside v. Kimberly Clark Corp.*,

    108 F.4th 771, (9th Cir. 2024) .......................................................................4,11

*Williams v. Gerber Prods. Co.*,

    552 F.3d 934 (9th Cir. 2008) ...........................................................................10

*Zahora v. Orgain LLC*,

    No. 21-705, 2021 U.S. Dist. LEXIS 213525 (N.D. Ill. Nov. 4, 2021) .............................13

## I.  INTRODUCTION

Defendants' entire RXBAR marketing campaign revolves around their "No B.S." philosophy. The central proposition of RXBAR advertising is *transparency*: the bars display a "short ingredient list" on the front of the packaging in a recipe-like form, culminating with what they refer to as "the last ingredient, 'No B.S.'" Consumers understand this to mean that RXBARs contain "No Bullshit" – a promise of transparency. Defendants confirm this means there is "no bad stuff" hidden inside. Contrary to the front-label representation, RXBARs contain "natural flavors," a notoriously un-transparent ingredient, which also makes it inherently "bad stuff" hidden in a product marketed as transparent. In fact, Defendants nowhere disclose the makeup of these "natural flavors" to consumers. Reasonable consumers are deceived by RXBARs' "No B.S." façade.

Having deployed a marketing campaign designed around a veneer of "No B.S." transparency, Defendants challenge this lawsuit with the remarkable suggestion that no reasonable consumer would have believed what they were selling. But marketing works. It's the reason Kellanova paid $600 million for the RXBAR brand and it's the reason they sold $120 million worth of RXBARs in the first year after that acquisition. As the complaint plausibly alleges, marketing is also the reason why sales exploded when RXBARs switched from generic packaging to the new front label format touting their (supposed) transparency and "No B.S." promise.

RXBARs' false transparency and the "No B.S." representation cannot be defended as mere puffery. Even beyond Plaintiffs' plausible allegations that "natural flavors" are "bad" because they are processed ingredients made in a lab, "natural flavors" are "B.S." because they are the *opposite* of transparent. Courts also routinely recognize that a representation that a product is "free of" something is an actionable representation, rather than puffery. Having espoused a no-nonsense,

1

"what you see is what you get" product with "simple," "minimally processed" ingredients, Defendants cannot contend that nobody would have believed this or that the hidden use of unspecified "natural flavors" is consistent with the "No B.S." promise and veneer of transparency. These are the impressions Defendants intend to create, and where Plaintiffs plausibly allege that the RXBAR front label is likely to mislead a significant portion of reasonable consumers, the law provides no safe harbor in back-label fine print. The Court should deny Defendants' motion to dismiss in its entirety.

## II.    STATEMENT OF FACTS

Defendants market RXBARs as wholesome and transparent, a "No B.S." brand that began in the owners' kitchen using simple ingredients. First Am. Compl. ("FAC") ¶¶ 3-5, 22-23. The RXBAR "front label displays a short recipe-like format of the base ingredients (e.g., 3 egg whites, 6 almonds, 4 cashews, 2 dates), capped off with the statement 'No B.S.' at the bottom. The flavor ingredients are listed underneath (e.g., chocolate, sea salt)." *Id.* ¶ 27; *see also id.* ¶ 3 (the "Challenged Representations"); ¶ 26. According to RXBAR, the front label "is meant to convey to consumers: 'What's inside. What isn't. We think it's everything you need to know.'" *Id.* ¶ 27. Each of the RXBAR "Products" uses the Challenged Representations. *Id.* ¶¶ 9-10. For example:



*Id.* ¶ 3.

RXBARs were not always marketed in this way. RXBARs' simple ingredient list and "No B.S." label was the product of a 2015 marketing redesign. *Id.* ¶ 29. RXBAR founder Peter Rahal acknowledged that "[b]efore the redesign, we did the trade show circuits and no one gave us any love." *Id.* ¶ 30. So, Rahal initiated a label design change to move RXBAR Products' "short ingredient list to the front of the packaging in a large font—followed by the last ingredient, 'No B.S.'" *Id.* ¶¶ 29-30. As he explained it, the marketing redesign was geared around the concept that "people like RXBar because it's minimal ingredient [sic]. People don't buy it because of the brand name." *Id.* ¶ 30. The strategy worked: instead of getting no "love," the redesign spurred a revenue increase from $2 million to $160 million in just three years. *Id.* ¶ 31.

Snack food marketing is not unintentional. The RXBAR website underscores this transparency and "clean snacks" messaging, assuring customers that RXBARs use "simple ingredients," meaning "our products are made with as few ingredients as possible. These ingredients are derived from real foods." *Id.* ¶ 25. RXBARs "strive for minimally processed ingredients" and "have ingredients you can actually pronounce." *Id.* Playing up the transparency of those ingredients, Defendants tout "We tell you what's on the inside on the outside," and "No B.S. stands for no bad stuff, meaning all of our ingredients are there for a reason. We don't use fillers, we don't cut corners, and that's why it is on our packaging." *Id.* ¶ 25. Consumers "are led to believe that RXBAR Products contain only whole ingredients—namely those appearing on the front label—to the exclusion of any hidden or highly processed ingredients[.]" *Id.* ¶ 28; *see also id.* ¶¶ 39-40.

The truth, however, is otherwise. Contrary to the front-label representations, RXBARs do contain "B.S."—in the form of unspecified "natural flavors." FAC ¶¶ 36-39; *see also* ¶ 43. "Natural

flavors" are an "unspecified ingredient which contains a proprietary mixture of flavoring agents derived through a process involving chemical solvents, carriers, emulsifiers and other additives." *Id.* ¶ 7. "Natural flavors" are a notoriously "bad" and "markedly un-transparent ingredient," *id.*, which "can be synthetically and artificially derived from anything that isn't petroleum or a petroleum byproduct." *Id.* ¶ 35. In fact, "natural flavors" commonly include MSG, the suspected carcinogen carrageenan, GMO-derived ingredients, and other synthetic and artificial chemicals. *Id.* ¶ 35. Because all "natural flavors" are "highly processed food additives," and contain "a variety of hidden, unspecified source material, sub-ingredients and chemical components," it is considered a "black box for consumers who desire ingredient transparency and minimally processed foods." *Id.* ¶¶ 36-37. Defendants nowhere disclose the content of the "natural flavors" they use in RXBARs. *Id.* ¶ 7.

Plaintiffs bought RXBARs, believing them to be free from unidentified, highly processed ingredients. FAC ¶¶ 17-18. Consistent with Plaintiffs' understandings, RXBAR's front-label representations "lead reasonable consumers … to incorrectly believe the Products are free from hidden, highly processed ingredients." *Id.* ¶¶ 11; *see also id.* ¶¶, 5, 8, 28, 39-40, 44. Plaintiffs would not have purchased RXBARs, or would not have paid a price premium for them, had they known the Products contained natural flavors. *Id.* ¶ 46.

## III.   ARGUMENT

Plaintiffs' California and New York consumer protection claims are governed by the "reasonable consumer" standard, "which requires a plaintiff to show that members of the public are likely to be deceived by the defendant's marketing claims." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024); *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("To state a claim for false advertising or deceptive business practices under New York or

California law, a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances."). *See also Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020) ("These [California and New York consumer protection] statutes all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.").[1] Under either state's law, "plaintiffs' claims survive [a motion to dismiss] if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell*, 982 F.3d at 476.

The "reasonable consumer" under this test "is [an] ordinary consumer acting reasonably under the circumstances. Such a consumer need not be exceptionally acute and sophisticated, nor must they necessarily be wary or suspicious of advertising claims. Rather, to meet the 'reasonable consumer' standard, a plaintiff need only show that members of the public are likely to be deceived by the defendant's advertising. Members of the public are likely to be deceived by advertising that is false and by advertising that, although true, is either actually misleading or has a capacity, likelihood, or tendency to deceive or confuse the public." *Salazar v. Walmart*, Inc., 83 Cal.App.5th 561, 566 (4th Dist. 2022) (cleaned up).

### A. Plaintiffs Allege Actionable Misrepresentations.

"Natural flavors" are "highly processed food additives" that contain "hidden, unspecified source material, sub-ingredients and chemical components." FAC ¶ 36. Consumers who desire ingredient transparency and minimally processed foods consider "natural flavors" to be a black box ingredient. *Id.* As Plaintiffs plausibly allege, the hidden inclusion of "natural flavors" in

---

[1] Unless noted, all citations and internal quotation marks are omitted.

RXBARs renders the Products' front-label representation of transparency inherently deceptive. *Id.* ¶ 8. This is particularly true insofar as Defendants *nowhere* publicly identify the sub-ingredients of their "natural flavors." *Id.* ¶ 7.

Ignoring this most fundamental deception about RXBARs' false ethos of transparency, Defendants argue that the "No B.S." representation is inactionable puffery, attempting to liken "No B.S." to a "subjective description of quality" where there is no benchmark for whether an ingredient is "bad." But Defendants chose to characterize "No B.S." as the final catch-all RXBAR "ingredient," FAC ¶ 30, ruling out the presence of any bad ingredient, which—in the context of RXBARs labels—means any *un-transparent* one, at a minimum. This is a concrete statement, not an illusory quality comparison.

Unlike "generalized" or "vague" assertions of "product superiority" that are understood to constitute puffery, Defendants acknowledge that a "specific or measurable claim" like the categorical "no added sugar" or "free of" certain ingredients is actionable. Mem. at 5, 6. A representation that RXBARs contain "no" B.S. ingredients is likewise categorical, and thus actionable. *Brown v. Madison Reed, Inc.*, "directly on point" according to Defendants, confirms this. *Brown* acknowledges that unlike "salon gorgeous" or "salon-quality," "a reasonable consumer might rely on the factual representation that the products were 'free of' certain ingredients[.]" 622 F.Supp.3d 786, 802 (N.D. Cal. 2022) (but dismissing claim because the "free of ammonia" representation at issue was "factually true"). The representation that RXBARs contain "No B.S."—likewise categorical in nature—is akin to asserting that a product is "free of ammonia" and is unlike the subjective "salon gorgeous."

*Catilina Nominees Proprietary, Ltd. v. Stericycle, Inc.*, is also instructive. In *Catilina*, the court noted that unlike "the clearly exaggerated or unprovable assertions (*i.e*, 'greater security,'

'better quality,' and 'lowest prices') that courts typically deem puffery," allegations that a safety container lid "prevents access to the contents of the container" or results in "100% sustained reduction in needlesticks" are testable, and thus actionable, propositions, unlike a nonquantifiable boast of "increasing safety." No. 15-10734, 2021 U.S. Dist. LEXIS 58100, at *16-17 (N.D. Ill. March 26, 2021). Representing that a container lid "prevents access" is a categorical assertion, just like the assertion that RXBARs are transparent and categorically exclude "B.S." And, just as the representation in *Catilina* was "the kind of claim that hospitals and other consumers might look for and rely upon when choosing needle disposal products[,]" *id.* at *17, the "No B.S." assertion is the type of claim that health-conscious consumers might look for when choosing wholesome protein bars. FAC ¶¶ 2, 17-18, 30, 39-40.

Defendants take aim at a hypothetical case addressing a product labeled "delicious," Mem. at 8, but that is far afield. Representations about taste are, "by definition," neither objective nor quantifiable. *Stuve. v. Kraft Heinz Co.*, No. 21-1845, 2023 U.S. Dist. LEXIS 6184 at *33 (N.D. Ill. Jan. 12, 2023). Nor should the Court credit at the pleadings stage Defendants' contention that "bad stuff" is insufficiently specific or objective. First, even aside from RXBARs' deceptive lack of transparency and *categorical* exclusion of "B.S.," Plaintiffs plausibly allege that "natural flavors" are "B.S." – at a minimum because they are not transparent. FAC ¶¶ 32-37, 40. Second, if there is a "question of fact as to whether a statement is an express warranty or mere puffery, a claim cannot be dismissed on the pleadings." *Stuve*, 2023 U.S. Dist. LEXIS 6184, at *33, citing *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010), *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 893, 906 (N.D. Ill. 2013), and *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F.Supp.2d 401, 407-08 (E.D.N.Y. 2004). As the *Reid* court noted, the Seventh Circuit's "decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion

is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment." 964 F.Supp.2d at 906 (*sub nom. Lake v. Unilever U.S., Inc.*); *see also id.* at 908 (rejecting puffery defense aimed at representation that a hair treatment was a "smoothing" product, because the question whether this was an affirmation of fact was, itself, "a question of fact that cannot be resolved on a motion to dismiss."). *See also Chacanaca*, 752 F.Supp.2d at 1114 (Ninth Circuit describes puffery as involving "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers. … On the other hand, misdescriptions of specific or absolute characteristics of a product are actionable."). The RXBAR label asserts facts about the contents of the bar which would be within Defendants' knowledge and of which consumers would be ignorant and it misdescribes "specific or absolute" characteristics of the Products. This is not puffery.

The cases Defendants cite do not require a different result. Some differentiate between inactionable puffery and testable representations. *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F.Supp.3d 226, 241 (S.D.N.Y. 2020) (inactionable claims like "WE LOVE OUR HENS" compared with actionable "Our hens can peck, perch, and play on plenty of green grass."); *O'Connor v. Ford Motor Co.*, 567 F.Supp.3d 915, 963-64 (N.D. Ill. 2021) (inactionable touting of "performance and reliability" and "top of the line" compared with actionable representations like "smooth" which arguably "is a measurable attribute in the context of transmissions."). Others fit the category of vague or subjective descriptions or "claims about the relative value of the product[.]" *Bates v. Abbott Laboratories*, 727 F.Supp.3d 194, 204 (N.D.N.Y. 2024) ("complete" and "advanced" nutrition); *Biczo v. Ferrara Candy Co.*, No. 22-1967, 2023 U.S. Dist. LEXIS 46294 at *7 (N.D. Ill. Mar. 20, 2023) ("rich and creamy" is a "subjective description of quality");

8

*Welk v. Beam Suntory Import Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) ("handcrafted" bourbon not reasonably interpreted as statement of fact but instead as generalized statement of high quality); *Walcoff v. Innofoods USA, Inc.*, No. 22-1485, 2023 U.S. Dist. LEXIS 78474, *19 & n.11 (S.D. Cal. May 4, 2023) (no misrepresentation on "the gravamen" of claim that product was falsely labeled as "keto" and "keto-friendly" where net carbs and sugars specifically identified; "no funny stuff" statement appeared only once in complaint's general allegations). Unlike those representations, transparency and "No B.S." are testable.

In addition to their own experiences, Plaintiffs plausibly allege that other consumers view the presence of "natural flavors" as inconsistent with RXBARs' transparency and "No B.S." pledges. FAC ¶¶ 39, 40 (reviewer complaints). Defendants argue that these complaints show that "natural flavors" are disclosed in the back-label ingredient list. *See* Mem. at 7-8. As explained in the following section, the back-label disclosure has no bearing on whether Plaintiffs plausibly allege that RXBARs' front label is likely to be deceptive, which is all that is necessary to survive Defendants' motion to dismiss. The consumer complaints do, however, support the notion that purchasers view "No B.S." as a factual representation and also view the inclusion of "natural flavors" as inconsistent with "No B.S." and with the representation of transparency in RXBARs' marketing. *See also id.* at ¶¶ 47-48 ("natural flavors" unnecessary and not used in competing products). At a minimum, whether this reflects a warranty or inactionable puffery presents a question of fact that cannot be decided on a motion to dismiss.

### B. The RXBAR Back Label Does Not Cure the Front Label Deception.

After arguing that no reasonable consumer would understand the front-label's "short list" of ingredients culminating with "No B.S." in exactly the way that Defendants intended for that label to be understood (FAC ¶¶ 25-27, 30), Defendants turn to arguing that a reasonable consumer

would not interpret RXBARs' front-label ingredient list to exclude other ingredients, Mem. at 9-10, and that any reasonable consumer "would know to look at the side or back label" for a complete ingredient list. Mem. at 11.[2] The Seventh Circuit soundly rejected these arguments in *Bell*. In *Bell*, the court reversed a pleadings-stage dismissal, which the district court based in part on its conclusion that the product's front-label "100% Grated Parmesan Cheese" was ambiguous and that "a consumer who seeks clarity can find it by reading the ingredient list on the back label." 982 F.3d at 475. The Seventh Circuit rejected this approach, holding that "an accurate fine-print list of ingredients does not foreclose as a matter of law a claim than an ambiguous front label deceives reasonable consumers." *Id.* at 476. In doing so, the Seventh Circuit "agree[d] with the reasoning" of the First, Second, and Ninth Circuits that "the reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label." *Id.* at 477, citing *Dumont v. Reily Foods Co.*, 934 F.3d 35 (1st Cir. 2019), *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), and *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).[3] *See also Terrazzino v. Wal-Mart Stores, Inc.*, 335

---

[2] Although Defendants do not cite them, the Court should disregard the Smith Declaration [Dkt. 14] exhibits. The images in those exhibits differ from the RXBAR images depicted and described in the FAC. In particular, the Smith Decl. exhibits depict the front label "No B.S." representation in the upper right corner rather than as the "final ingredient" in the list, and certain of them also refer to "natural flavors." *Compare* Dkts. 14-2 through 14-11 *with* FAC ¶¶ 3, 7, 29. Defendants make no attempt to explain or justify the inclusion of these competing images, which appear to depict a new RXBAR label. According to U.S. Patent & Trademark Office records, Defendants applied for this new label trademark on March 7, 2025 (after this lawsuit was filed). *See* Trademark Status & Document Retrieval for U.S. Serial No. 99072294, *available* at https://tsdr.uspto.gov/#caseNumber=99072294&caseSearchType=US_APPLICATION&caseTy pe=DEFAULT&searchType=statusSearch (last viewed May 14, 2025). Either way, the Smith Decl. exhibits are not "incorporated by reference" in the complaint, and Defendants may not use extrinsic evidence to contradict the facts in the complaint on a motion to dismiss. *See Int'l Aerobatics Club Chptr. 1 v. City of Morris*, 76 F.Supp.3d 767, 774 (N.D. Ill. 2014) (Tharp, J.).

[3] In *Williams*, the Ninth Circuit had held that a consumer is not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 552 F.3d at 939. The Ninth Circuit later held that where a plaintiff plausibly alleges "that a reasonable consumer could interpret the front label as

F.Supp.3d 1074, 1084 (N.D. Ill. 2018) (rejecting argument that a complete ingredient list available on website selling product would render "All Natural" representation not misleading).

Whether there is deception ordinarily is a question of fact, inappropriate for determination at the pleadings stage. As the *Bell* court noted, "how consumers actually understand defendants' labels" presents questions that "may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive. Plaintiffs are entitled to present evidence on how consumers actually understand these labels." 982 F.3d at 480; *see also id.* at 481 ("What matters here is how consumers actually behave—how they perceive advertising and how they make decisions. These are matters of fact, subject to proof that can be tested at trial…."). *See also Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("[The] determination of the likelihood of deception is an impressionistic one more closely akin to a finding of fact than a conclusion of law."). The Ninth Circuit concurs: "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]. Likewise, in federal court, dismissals of UCL, FAL, and CLRA claims at the pleadings stage have occasionally been upheld, but such cases are rare. Dismissal is appropriate when the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Whiteside*, 108 F.4th at 778 (alterations in original). At the pleadings stage, dismissal is justified only if the claim is based on "unreasonable or fanciful interpretations of labels or other advertising." *Bell*, 982 F.3d at 477. Interpreting RXBAR labels exactly as Defendants intend for them to be interpreted cannot be

---

unambiguously representing that the Products do not contain synthetic ingredients, and that a reasonable consumer would not necessarily require more information from the back label before so concluding[, t]hese plausible allegations preclude Defendant's reliance on the back-label ingredients list at this stage." *Whiteside*, 108 F.4th at 782. The Ninth Circuit noted that this decision was consistent with *Bell*, *Dumont*, and *Mantikas*. *Id.* at 781 n.3.

described as "fanciful." *See* FAC ¶ 27 (RXBAR front label tells consumers "What's inside. What isn't. We think it's everything you need to know.").

The cases Defendants cite do not bear even a passing resemblance to this one. *Weaver v. Champion Petfoods USA, Inc.*, to start, is a summary judgment decision. 3 F.4th 927, 938 (7th Cir. 2021) (question was whether plaintiff presented sufficient *evidence* from which jury could find reasonable consumer would be misled, rather than plausibility analysis of pleadings as in *Bell*). Further, unlike in *Weaver*, RXBARs do not merely represent that they are made with "fresh regional ingredients." Rather, RXBARs by design prominently display a "short" ingredient list designed to communicate the transparent inclusion of only simple, whole ingredients and culminating with the "No B.S." exclusion of any bad ingredients. Likewise, that the granola in *Hicken v. Quaker Oats Co.* was called "Simply Granola" in no way excluded any particular ingredient or class of ingredients as RXBARs do, nor could the phrase "simply granola" alongside a list of ingredients plausibly be interpreted to include only those four ingredients. No. 22-6043, 2024 U.S. Dist. LEXIS 217324, *5-8 (N.D. Ill. Dec. 2, 2024). There was likewise no allegation that the label at issue in *Jackson v. Kraft Heinz Foods Co.* plausibly excluded any particular ingredient or class of ingredients. No. 21-5219, 2022 U.S. Dist. LEXIS 180673, *6 (N.D. Ill. Aug. 3, 2022) (label not misleading simply because it does not list all additives). Unlike these cases, Plaintiffs plausibly allege that the RXBAR label does deceptively communicate that it discloses all the ingredients in the product—and it excludes any bad stuff.

Invoking consumers' "common sense," Defendants argue that no reasonable consumer could believe that the RXBAR front label lists all the ingredients in the product. *Bell* rejected a comparable "common sense" argument. As the Seventh Circuit held, the suggestion that consumer "common sense" should have ruled out the idea that pure cheese could be shelf stable without

refrigeration "strayed from" the Rule 12(b)(6) standard. 982 F.3d at 482 ("Reasonable consumers' expectations about the need to use either additives or refrigeration cannot be decided as a matter of law."). The same applies here, where there is no suggestion that consumers understand what ingredients are necessary to make a protein bar. *See also Strow v. B&G Foods, Inc.*, 633 F.Supp.3d 1090, 1099-1100 (N.D. Ill. 2022) (rejecting argument that reasonable consumer would know butter cannot exist in liquid form at room temperature; not "unreasonable or fanciful" for consumer to believe as much).

Defendants also contend that "common sense" precludes such an understanding because RXBAR front labels "often" omit the ingredient that provides the Product with its particular flavor. But Plaintiffs allege that the RXBAR front label *does* include a flavor ingredient, FAC ¶¶ 3-4. This prompts Defendants again to invoke what they believe to be consumers' "understand[ing]" of the distinction between *flavors* and *ingredients*. This exercise in hair-splitting is the same one that *Bell* rejects, particularly where "consumers are likely to exhibit a low degree of care when purchasing low-priced, everyday items. The same holds true with the low-cost groceries here." *Bell*, 982 F.3d at 478-79. More importantly, this case is about what RXBARs represent that they *exclude*, which makes it different than the claims in the "flavoring" cases to which Defendants analogize. In *Zahora v. Orgain LLC*, No. 21-705, 2021 U.S. Dist. LEXIS 213525, at *2 (N.D. Ill. Nov. 4, 2021), the plaintiff alleged that a product label asserting "Vanilla Bean Flavor" misrepresented that the product was not actually (or predominantly) flavored from vanilla beans rather than artificial flavors. The court concluded that unlike a product label with words like "made with vanilla beans" or "contains vanilla beans," a reasonable consumer would only expect vanilla bean *flavor* from this product. *Id.* at *9. The claims here are different. Plaintiffs do not allege deception in RXBARs' front-label use of "strawberry" or "blueberry" or "chocolate sea salt" flavor descriptions. Instead,

Plaintiffs challenge RXBARs' purported transparency and front-label representation that categorically *excludes* something that is actually in the Products: "natural flavors." Defendants' other cases are distinguishable on this same basis. *See Wallace v. Wise Foods, Inc.*, No. 20-6831, 2021 U.S. Dist. LEXIS 138910, *5 (S.D.N.Y. July 26, 2021) ("Nothing in the label states or implies that the chips' flavor is derived entirely from cheddar and sour cream."; label did not exclude anything); *Steele v. Wegmans Food Mkts.*, 472 F.Supp.3d 47, 50 (S.D.N.Y. 2020) ("vanilla" ice cream label not deceptive as it made no affirmative representation about flavoring source, label did not exclude natural flavors).

### C.  There is No Basis to Dismiss Plaintiffs' Ancillary Claims

Because Plaintiffs adequately plead deception, *infra* Points III.A. & III.B., the Court should reject Defendants' separate argument, Mem. at 13, for dismissal of the UCL "unlawful" and "unfair" claims and common law claims.

### D.  Plaintiffs Adequately Allege Standing to Seek Injunctive Relief.

Defendants argue that Plaintiffs lack standing to obtain injunctive relief because they are now aware that RXBARs contain natural flavors. Mem. at 15. As Defendants' case *Geske v. PNY Techs., Inc.* notes, there is a split of authority on the question "whether consumer plaintiffs claiming [only that] they were deceived can pursue injunctive relief when they are aware of the deceptive practice at issue." 503 F.Supp.3d 687, 701 (N.D. Ill. 2020) (alteration in original, citing *In re Herbal Supplements Mktg. and Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 76207 (N.D. Ill. 2017)). Characterizing treatment of the issue in *Camasta v. Jos. A. Bank Clothiers*, Inc., 761 F.3d 732 (7th Cir. 2014) as *dicta*, the court noted that the Seventh Circuit "hasn't directly addressed" the issue. 503 F.Supp.3d at 702. Ultimately, the plaintiff in *Geske* could not seek injunctive relief because "she does not allege that she or any of the class members are likely to

14

purchase the product again." *Id.* at 703. Here, by contrast, Plaintiffs allege not "only that" they were deceived, but also that they "would consider purchasing the Products again in the future if [they] could be sure the Products delivered the advertised benefits." FAC ¶¶ 17(g), 18(g). Only injunctive relief can address this issue, where RXBAR "continues to misrepresent the Products with the Challenged Representations," and where "affirmative disclosures" are necessary to provide "accurate information about the Products' true nature[.]" *Id.* ¶ 50(c). Courts in the Ninth Circuit have allowed injunctive relief claims where plaintiffs allege that misrepresentations are ongoing and will injure them in the future without adequate legal remedy, and that "a public injunction under the UCL will benefit the general public in a manner unlike legal damages." *See*, *e.g.*, *Gamino v. Spin Master, Inc.*, No. 23-2242-DMG, 2025 U.S. Dist. LEXIS 69898, at *16-17 (C.D. Cal. March 31, 2025). Plaintiffs make those same allegations here. FAC ¶¶ 50(c)-(d).

## IV.   LEAVE TO AMEND

In the event the Court identifies any deficiencies in the FAC, Plaintiffs respectfully request leave to amend. Fed. R. Civ. P. 15(a). *See also Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir.2004) (leave "especially advisable when such permission is sought after the dismissal of the first complaint."); *Evans v. Civitas Educ. Partners, LLC*, No. 22-3842, 2024 U.S. Dist. LEXIS 184910, *9 (N.D. Ill. Oct. 9, 2024) (Tharp, J.) (same, granting leave to amend). The FAC is substantively Plaintiffs' first complaint, having been amended solely to further address diversity jurisdiction at the Court's directive. *See* Dkt. 4.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss. To the extent the Court grants any portion of Defendants' motion to dismiss, Plaintiffs respectfully request leave to amend to cure any deficiencies.

Dated: May 16, 2025

 /s/ Derek Y. Brandt
Derek Y. Brandt (IL Bar #6228895)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (618) 404-0126
dbrandt@clarksonlawfirm.com

*Attorney for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


By: _/s/ Derek Y. Brandt_
Derek Y. Brandt